## State of Vermont v. Wayne C. Bosworth

[197 A.2d 477]

October Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed December 3, 1963

Reargument Denied December 19, 1963

*Peter F. Langrock*, State's Attorney, for the State.

*John A. Calhoun* for the respondent.

**Hulburd, C. J.** This is a usury matter. The respondent was prosecuted and convicted under 9 V.S.A. §34 (c). The information filed by the state's attorney charged that the respondent on the 9th day of September, 1961 "did then and there knowingly and wilfully contract with and aid and assist one Samuel Emilo to contract with Earl E. Farnsworth and Marguerite Farnsworth for a sum of money in excess of the legal interest for the loan, use, or forebearance of money, without express authorization of law, in that the said Wayne C. Bosworth and Samuel Emilo did loan said Earl E. Farnsworth and Marguerite Farnsworth, husband and wife, the sum of thirty-five thousand, three hundred fifty-one and 27/100 dollars ($35,351.27) and did contract for the sum of one thousand ($1,000) per month for a period up to five months and the additional sum of one thousand

dollars ($1,000) for a further period of two months over and beyond said legal rate of interest of $6.00 per $100.00 for one year."

The evidence tended to show the following facts. The respondent and his son, Frederick A. Bosworth, are attorneys of this Court. They carry on a law practice at the same office in Middlebury, Vermont. They are not partners, their law practice being independent, although they do share the expense of maintaining the office between them.

In June 1960, Frederick A. Bosworth, as attorney for the Federal Land Bank of Springfield, brought foreclosure proceedings against Earl and Marguerite Farnsworth with respect to their home farm upon which the bank had a mortgage. The equity of redemption under a decree obtained in connection with the foreclosure was fixed to expire on September 13, 1961. This was an important date to the Farnsworths, and the operational effect of it had been discussed by Frederick Bosworth with the Farnsworths who accordingly had made some effort to refinance their obligations—which included a second mortgage to one Chickering—by negotiations with one Samuel Emilo, but no firm arrangement had resulted.

Time was getting short. At this juncture, on the morning of September 9, 1961, which was a Saturday, the respondent called Earl Farnsworth on the telephone. He was not at home and so a message was left with his wife: "When he comes home, have him contact me." Being informed of the telephone call, Mr. Farnsworth immediately went to the respondent's office. On his arrival, he was handed a carbon copy of a letter from the Federal Land Bank, the respondent saying: "Here, read that. You have got no time to lose." The respondent then directed Mr. Farnsworth to go home and get his wife and come back right after dinner. Pursuant to this, Farnsworth returned with his wife, and as he entered the respondent's office, he heard the respondent say to his son, "We will put this mortgage in the Chittenden Trust and borrow the money on it."

Following Mr. Farnsworth's arrival at the respondent's office considerable activity in the drafting of papers occurred. Frederick Bosworth acted as attorney for Emilo. Mr. Farnsworth heard the respondent dictate to his secretary a so-called repurchase agreement. A warranty deed from the Farnsworths to Samuel Emilo was prepared by Frederick Bosworth. During this time Frederick Bosworth was also seeking to locate Mr. Emilo on the telephone. This he suc-

ceeded in doing, and upon the arrival of Mr. Emilo a short time later, Mrs. Farnsworth was called in from the car where she had been sitting outside and she and her husband executed a deed of their farm and received in return the repurchase agreement which the respondent advised them it would be unnecessary to record in the land records. The repurchase agreement was couched in the form of a letter and read as follows:

"Middlebury, Vermont
September 9th, 1961

"Mr. & Mrs. Earl E. Farnsworth
Waltham, Vermont
Dear Mr. & Mrs. Farnsworth:
In connection with the conveyance by you to me this date of your farm and certain personal property, I agree that you have an option to repurchase the farm and personal property from me on the following terms and conditions.

"At any time from this date until October 13, 1961 the repurchase price shall be $36,351.27 with interest on $35,351.27 to the date of exercise of this option. At any time from October 14, 1961 to November 13, 1961 the repurchase price shall be $37,351.27 with interest as above. At any time from November 14, 1961 to December 13, 1961, the repurchase price shall be $38,351.27 with interest as above. At any time from December 14, 1961 to January 13, 1962, the repurchase price shall be $39,351.27 with interest as above. At any time from January 14, 1962 to February 13, 1962, the repurchase price shall be $40,351.27, with interest as above. At any time from February 14, 1962 to April 13, 1962 the repurchase price shall be $41,351.27, after April 13, 1962, this option shall expire and be of no further effect.

"I agree that during the pendency of this option you may sell the hay now on said farm and the two tenant houses, provided the net proceeds from such sales are paid to me to apply on the above repurchase price. In the event that you should fail to exercise this option in full, the amounts so paid shall be forfeited by you.

"To the above repurchase prices shall be added any amounts which I may be required to pay for taxes or insurance premiums to protect my interest in the above property. There shall also be

added any sums which I may otherwise be required to pay for the protection of my interest in the above property.

Samuel Emilo

"I agree that the foregoing option, together with the assumption by Samuel Emilo of the Federal Land Bank and Chickering mortgages shall constitute full consideration for the above conveyance.

Earl E. Farnsworth
Marguerite Farnsworth"

The respondent had had legal dealings with Farnsworths prior to September 9, 1961 and was familiar with their farm. Frederick Bosworth had informed the Federal Land Bank that the value of the farm was greatly in excess of the mortgage under foreclosure and his judgment seems to have been confirmed by everyone who testified on the matter.

The Farnsworths testified that their only purpose in executing the deed was to secure a loan. Obviously, if the decree was not met their equity would be cut off. They also testified that they intended to repay the loan. They left the respondent's office with the repurchase agreement providing them with an opportunity to do so,—but only at the figure stated.

Following the transaction on Saturday as we have related it, came certain necessary implementing procedures. These were attended to the next week. Inescapably money had to be obtained to pay the amount of the Federal Land Bank decree; there was the second mortgage to Chickering to be taken care of; fire insurance had to be obtained. Evidence was presented on these matters by the State claiming that they all shed light on the true relationship of the respondent to the transaction occurring on the previous Saturday. The evidence disclosed the following circumstances in this connection. On September 12, the respondent and his wife together with their son, Frederick and his wife, guaranteed a note in the amount of $25,000.00 at the Chittenden Trust Company on the Farnsworth Farm. The respondent then personally signed a check for $24,351.27 which went to pay off the mortgage decree of the Federal Land Bank. On the same day the respondent took up the matter of fire insurance with an officer of the Chittenden Trust

Company and on the following day had the agent of the insurance company raise the insurance on the buildings on the Farnsworth farm to a total of $61,000.00. Thereafter, about September 15, the respondent negotiated with Chickering, the second mortgagee, which resulted in his being paid the amount of his mortgage by checks drawn by Emilo amounting to about $10,500.00. Emilo, it developed, on September 18, obtained $10,500.00 from the Burlington Savings Bank on his note which bore the endorsement of the respondent and Frederick A. Bosworth. In connection with the note, the respondent wrote the Burlington Savings Bank on September 20, ". . . it will be largely my responsibility to see that it is paid at maturity." Eventually, the respondent did in fact pay the note on December 29, the same day which the Farnsworths repaid their loan when they took title back under the so-called repurchase agreement.

In addition to the foregoing, the respondent participated in passing on an application of the Farnsworths for leave to sell one of the tenant houses on the farm pursuant to one of the provisions of the so-called repurchase agreement, the details of which we need not go into here.

Finally, the evidence discloses that just subsequent to September 9, the respondent entered into an agreement with Samuel Emilo and Frederick Bosworth by the terms of which each would bear one-third of the risk involved in the undertaking concerning the Farnsworths and would take one-third each of any profit realized.

With the evidence standing as we have related it, the respondent, in various ways, has raised the question of whether there was a lack of proof to support a conviction. This involves an inquiry as to the sufficiency of the evidence bearing on two propositions: was the transaction usurious? If so, did the respondent knowingly participate in it?

As to the first proposition, we should observe that transactions are not to be looked at merely from the point of view of form. In other words, merely because the transaction took the form of a repurchase agreement does not mean in fact that it did not amount to a loan on usurious terms. As Lord Mansfield tersely stated in *Floyan* v. *Edwards,* Cowp. 112: "Where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute." There is much sense in the state's attorney's argument that "the

same reasons of necessity that force a borrower into the hands of a usurer would prevent the borrower from dictating the form of the papers to be drawn covering the transaction." It is for this reason that it has been held that where the accused had made use of a subterfuge to evade the usury law, the court will look at the true nature of the transaction. *People* v. *J. M. Adams & Co.,* 112 Cal. App. 769, 295 P. 511. As bearing on this point in this case, we note that the jury had before it the following pertinent evidence: that the Farnsworths themselves regarded the transaction as a loan; that their possession of the property conveyed as it was to Emilo was never interrupted; that they had the right under the repurchase agreement to "sell" the hay and two tenant houses provided the net proceeds from such sales were turned over to Emilo to apply on the repurchase price; that there was an absence of Federal Revenue stamps on the deed from Emilo to the Cochrans upon repurchase by the Farnsworths; that the repurchase price "jumped" a thousand dollars a month without being related to any corresponding change in the value of the land; that in general no acts of ownership were exercised by Emilo. This evidence was such as to justify a determination by the jury of the true nature of the transaction. The cases generally hold that as a general proposition the question of whether as regards the usury law a transaction is a bona fide sale with an option or agreement to repurchase, or a loan, is one for the jury. See 154 A.L.R. 1067; also 55 Am. Jur. Usury, §24.

Having determined that there was evidence upon which the jury might find that the transaction was usurious, we come to a second inquiry, namely, was there evidence that the respondent knowingly participated in or aided a usurious transaction. The respondent points out that the agreement entered into by the Farnsworths on September 9, 1961 was between them and Emilo. There is nothing in the transcript, he asserts, which tends to show that the respondent himself contracted with the Farnsworths on that September 9 so that we are reduced to a question of whether he knowingly rendered assistance to Emilo in entering into an usurious arrangement. The trial court in submitting the case to the jury below agreed with the respondent that his "responsibility must be limited to his knowledge as of September 9, 1961." It is the respondent's position that if a usurious transaction was in the making on September

9, there is no evidence that he knew anything of it; that all that he did that day could have been done by any qualified notary who happened to be called upon to witness papers and take an acknowledgment of a deed. What happened later the respondent says, "by subsequent agreement with Emilo was a completely legitimate and innocent arrangement." The respondent does acknowledge, however, that what happened subsequent to September 9 may have significance if it tends to shed light on the true situation which existed on that day.

When we look at what was happening on September 9, perhaps the question which first comes to mind is this: why would Emilo give the Farnsworths the repurchase agreement unless, at the time he gave it, he knew that he was going to be able to perform? The deed to him from the Farnsworths, and the repurchase agreement he gave back to them, were utterly useless and meaningless unless he was prepared to pay off the Federal Land Bank decree which was about to become absolute. Without a certain source of funds, Emilo would be assuming a heavy obligation to no purpose. It is in this connection that the testimony of Mr. Farnsworth was that during the transaction on Saturday, September 9, he heard the respondent say to his son, "We will put this mortgage in the Chittenden Trust and borrow the money on it." It developed that on Tuesday of the next week, the respondent and his wife and his son and his wife did get, at the Chittenden Trust Company, the money which went to pay off the Federal Land Bank decree. This evidence alone was sufficient to justify the submitting to the jury the question of the nature of the respondent's activities on the 9th of September. It had some tendency, even though slight, to show that the respondent's acts were not just those of a notary or a scrivener as he claims but that, in fact, he was planning and guiding the whole transaction. When we add to this, the fact that he sent for Farnsworth in the first place, put before him the urgency of the situation, dictated the repurchase agreement, and participated in a transaction the result of which, as it developed, was to put him in a position to share in any possible profits, we are satisfied that there was some evidentiary basis for the jury to find that the respondent was involved at the time of the making of the contract with Emilo on September 9. In arriving at this conclusion, we have not attempted to exhaustively set forth all the evidence which might justify the jury's action,—there were other

little touches; it is sufficient to point out, as we have, that a genuine basis for proper inference had been laid before the jury.

Perhaps we might observe that the respondent placed himself somewhat in the position of one claiming an alibi. When he, in effect, said I was not present so far as the September 9 transaction between the Farnsworths and Emilo is concerned, he brought on himself the risk that one assumes when he sets out to prove an alibi. A failure with jury on this point impugned his entire good faith in the matter. The jury had the right to consider the evidence in the light of all that was before them.

■■ In addition to the foregoing, the respondent has briefed for our consideration the action of the trial court in denying his motion to disqualify the state's attorney. Some six grounds for doing this were urged on the court below, but the respondent has briefed only what he calls the "gist of his motion," namely of "bias and prejudice of the state's attorney against the respondent." The motion was not supported by affidavit, and being grounded on facts, the requirement of County Court Rule 51(2) was applicable and was not met. See *Federal Land Bank* v. *Goyette,* 123 Vt. 400, 403, 189 A.2d 563. Moreover, the motion was addressed to the trial court's discretion and it has not been pointed out to us wherein this discretion was abused. See 23A C.J.S. 90. We might add that we have not found in the record anything demonstrating bias or prejudice on the part of the state's attorney nor has the respondent pointed out to us anything in that regard. Everything in the record indicates that the respondent has had a fair trial at the state's attorney's hands.

■ The respondent offered to introduce evidence of the acquittal of Emilo in a separate case. This was not received. The respondent speaks of an acquittal of the principal in a companion case. It is to be borne in mind that in misdemeanors all parties are, if guilty at all, principals. *State* v. *Orlandi,* 106 Vt. 165, 171, 170 Atl. 908; and see 81 C.J.S., p. 241. The crime here charged was a misdemeanor.

At the time of argument, counsel for the respondent asked leave to file a supplemental brief. This request was granted, there being no opposition on the part of the State. The brief so filed brings to our attention one further claim of error.

Elsie Patnode, the respondent's secretary, testified that she did no typing for the respondent on the Saturday in question because Saturday was not a "working day" for her. When asked if she had "ever gone in to work on a Saturday," she replied: "No, not for years." She went on to say that she had worked for the respondent for thirty-three years. It will be recalled that Mr. Farnsworth testified that he heard the respondent dictate a repurchase agreement to her on the Saturday in question. Both the respondent and Frederick Bosworth testified that Mrs. Patnode had not worked Saturdays for several years. To meet this evidence the State called Kenneth Caul, Town Clerk of Middlebury, and offered to prove that there were of record four deeds dated in May and July, 1959 which Elsie Patnode had signed as a witness or notary along with Frederick Bosworth in one instance and Wayne Bosworth in, at least, another. Further, a calendar was offered in evidence showing that the dates of the deeds fell on a Saturday. This testimony was offered "in impeachment of the respondent's testimony and furtherance of impeaching Mrs. Patnode's testimony" bearing in mind that the respondent in his testimony had stated that he did not have any dealings at Mrs. Patnode's home on Saturdays and that she did not work in his office on Saturday. The evidence was admitted under the respondent's objection. Following the admission of this testimony, counsel for the respondent put in no evidence to rebut or account for what the State's evidence tended to show in this regard, the court being told by the respondent there would be no surrebuttal. In his brief here the respondent merely argues: "The admission of this testimony was erroneous, harmful and prejudicial. The jury may in the circumstances, have concluded that the respondent's witnesses were testifying falsely in this regard, from which they may have reasoned that they were testifying falsely in other matters, and so have cast doubt on all of their testimony." If this is so, it was because the respondent made no effort to account for the deeds dated as they were. See *State v. Levine*, 117 Vt. 320, 326, 91 A.2d 678. No doubt the evidence offered had only slight probative value on the question of whether the respondent's witnesses were truthful and correct about Mrs. Patnode's not being at the respondent's office on the day in question, but the persuasive effect of evidence is not for this Court. *Putnam v. Woodard*, 111 Vt. 39, 43, 10 A.2d 186. We cannot say that the

evidence in question lacked all tendency to support the State's contention; especially when the respondent made no attempt to meet its effect by showing explanatory circumstances, if any there were.

After a careful consideration of all of the respondent's assignments of error, we are satisfied that he has had a fair trial. The evidence before the jury was such as to furnish a proper basis for their verdict. The record discloses no reason why it should be disturbed.

*Judgment affirmed. Let execution be done. Motion for reargument denied.*