**Robert Brown v. Emanuele Pilini and Harold Wilson**

[262 A.2d 479]

No. 39-68

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 3, 1970

*Gelsie J. Monti*, Montpelier, for Plaintiff.

*Davis, Martin & Free*, Barre, for Defendant.

**Smith, J.** This is an appeal from the final decree of the Washington County Court of Chancery by the defendant, Pilini, which ordered the defendant to pay to the plaintiff, Brown, the sum of $32,620.26. The decree was issued by Robert W. Larrow, Chancellor, and dated September 9, 1968. Harold Wilson, a deputy sheriff, is no longer a defendant in the action.

In December, 1955, the plaintiff Brown was a dealer in used cars and the defendant Pilini was engaged in the collection, brokerage insurance and financing business. Both were domi-

ciled in Washington County. At this time the parties became business acquaintances and entered into a business arrangement regarding the used car business of Brown.

In general terms, this arrangement involved notes and mortgages, conditional sales contracts and floor planning arrangements. Brown would sell cars to customers and take back notes and/or conditional sales contracts to secure the unpaid balance. It was agreed between the parties that the conditional sales contracts and other similar papers would be endorsed by Brown to Pilini. In certain instances, the papers that Brown endorsed to Pilini were placed by the latter with the Barre Trust Company, which Bank loaned money thereon so long as it was additionally secured by Pilini's endorsement. In or about 1958 the parties could not agree upon what the business arrangement was between them and a complaint in chancery was brought by the plaintiff against the defendant in the Washington County Court of Chancery in April, 1958. For one reason or another, the case was not brought to hearing until September 11, 1967, when a series of hearings were conducted before Howard E. Armstrong, Esq., Special Master in Chancery. The hearing, which concerned some 117 different transactions between the parties, accounting of various kinds, a multitude of exhibits and the lengthy testimony of a number of witnesses, consumed some nine different days. However, it is not necessary to burden this opinion with any detailed account of the matters presented before the Master in view of the limited questions presented here.

Findings of Fact were filed by the Special Master on May 6, 1968. Such Findings of Fact were expressly approved and accepted by the Chancellor as the basis for the Decree, which was dated September 9, 1968.

The defendant's brief in this Court sets forth one claim of error: "The Master's Findings of Fact are in error, and a reversal of the decree is warranted and necessary." The thrust of the defendant's exception is directed to two monetary elements in the mathematical calculations used by the chancellor in calculating the amounts due from the defendant to the plaintiff, as found in No. 4 of the decree now quoted below:

> "The said Emanuele Pilini is liable to the Plaintiff and is hereby ordered to pay to the Plaintiff, Robert Brown, forthwith the following sums, to wit:

| | |
|---|---|
| (a) The sum of | $ 7,637.61 |
| (b) Interest on said sum of $7,637.61 from June 16, 1959 to September 9, 1968 | 4,230.23 |
| (c) Ten per cent of the sum of $127,-287.75 which was paid by the said Brown to the said Pilini as usury mentioned in Findings 9 and 10 amounting to | 12,728.77 |
| (d) Interest on said sum of $12,728.77 from April 25, 1958, the date of the Plaintiff's Bill of Complaint to the date of this Decree, September 9, 1968, amounting to the sum of | 8,023.65 |
| Total | $ 32,620.26" |

It is obvious that items (b) and (d) are merely respective interest additions to items (a) and (c) and it is to the latter two items that we now turn our attention. Item (a) is the balance left in a so-called reserve account which the parties set up as part of their business arrangement. It is undisputed that this amount was paid by Brown to Pilini from his share of the proceeds of the sales made of used automobiles. It was to be held by Pilini in Brown's name, to be used for reimbursement in the event that any of the used car purchasers failed to meet their obligations to pay the money due in the amounts, and at the times that were specified in their various obligations.

The Master, in his Finding 35, set up an accounting between the parties based on the evidence received by him relative to the reserve account. Without burdening this opinion with the full details of such accounting, the Master fully considered the debits and credits due from one party to the other in this controversy, as disclosed by the evidence before him, and found that the money due Brown from Pilini on the reserve account was $7,637.61. Defendant's claim of error is that in making such accounting the Master took one of plaintiff's exhibits at face value, but did not give the same belief to an exhibit to the contrary offered by the defendant in the case, or to put it another way, that the evidence was conflicting on the matter. As defendant admits, the credibility and weight of the

evidence was for the Master to decide, for it was he who was the trier of the facts. "As we have often said the weight of the evidence and the credibility of the witnesses is for the trier of the fact to determine, and all conflicts in evidence are to be resolved against the excepting party." *Vt. Shopping Center* v. *Pettengill, et al.,* 125 Vt. 145, 152, 211 A.2d 183. What defendant is saying in his brief relative to Finding No. 35 of the Master's Findings of Fact is that the Master chose to believe the evidence offered by the plaintiff rather than the defendant. But, as we have already stated, this was a matter that was entirely within the province of the trier of facts to determine.

The principal briefed exception of the defendant is to that part of the decree which orders him to pay to the plaintiff the sum of $12,728.77 as usury.

In his decree the Chancellor refers to Findings Nos. 9 and 10 of the Master as the reason for his legal conclusion that the defendant made a usurious loan of money to the plaintiff.

"9. Except for the first few transactions, it was the agreed procedure between the parties, i.e. the financing by Pilini of the car sales by Brown, that when a customer signed a Time Payment Agreement, Brown, at Pilini's request, has the customer also sign a Conditional Sale Lien Note covering the same car sale, and then he (Brown) brought both to Pilini and signed the Conditional Sale Lien Note on the back as collateral security for a loan, and left both with Pilini. Pilini next gave Brown a 'half sheet' showing amount due Brown from Pilini as a loan which was the amount of the Time balance entered in Time Payment Agreement form issued by Brown, less 10% or 20% of such amount, labeled 'Reserve'.

10. The total amount of the Conditional Sale Lien Notes signed by Brown's customers, on which Pilini made such loans to Brown and which Brown endorsed and delivered to Pilini, was $127,287.75."

References to other findings made in the above Findings 9 and 10 by the Master have been omitted in the above quotation.

The legal rate of interest in Vermont at the time of this transaction was declared in 9 V.S.A. Sec. 31:

"The rate of interest, or the sum allowed for forbearance or use of money, shall be $6.00 for $100.00 for one year, at the same rate for a greater or less sum and for a longer or shorter time, and a higher rate shall not be allowed except in cases specially provided by law." (Subsequently amended, No. 377 Public Acts, 1967 Adjourned Session.)

We agree with the defendant that there is no evidence in any of the transactions between the parties of a pre-existing or presently due debt, and that forbearance is not for consideration in this case. It was necessary, therefore, for the Master to be correct in his findings, upon which the Decree is based, that the usury found must have been predicated upon a loan from Pilini to Brown.

Defendant's position on this matter, as we understand it, is that the 117 transactions entered into between the plaintiff and the defendant were absolute assignments of such negotiable instruments from Brown to Pilini and that Pilini was a buyer of such property from Brown. The contention is that Pilini purchased the notes, and the mere fact that he purchased them at discount beyond the legal rate of interest does not constitute the transaction an usurious one. A further contention of the defendant is that the Master by the admission of oral evidence on the issue of whether the transactions between the parties were loans secured by conditional sales agreements, or were outright sales of such conditional loan agreement from Brown to Pilini, permitted the legal effect of the instruments to be varied and changed. Defendant claims this was in error under the parol evidence rule.

The complaint of the plaintiff set forth that he borrowed from the defendant varying amounts of money and that he had paid interest to the defendant on said loans the sum of 16% interest instead of the legal rate of 6% as set by the statute. In his action the plaintiff sought, among other things, the recovery of the usurious interest for the use of the money that Brown alleged had been loaned to him by Pilini, as well as an accounting between the parties.

In determining the question of usury, the transaction is not to be determined from the standpoint of form. The whole

transaction and the interest of the parties, particularly the lender, must be gathered from all the circumstances and events which preceded and accompanied their dealings. *Farnsworth* v. *Cochran,* 125 Vt. 174, 181, 212 A.2d 818; *State* v. *Bosworth,* 124 Vt. 3, 7, 197 A.2d 477.

■ The action of the plaintiff against the defendant was not based upon the various writing received in evidence, namely, the conditional sales contracts, and the negotiable instruments, which were exhibits in the case. These writings were collateral to the issue involved, and the action was not based on such writings. Therefore, the parol evidence rule did not apply. *Lunnie* v. *Gadapee,* 116 Vt. 261, 263, 73 A.2d 312.

The transcript of the hearing before the chancellor discloses that both Mr. Brown, as well as Mrs. Brown, who served as his bookkeeper, testified that the transactions between Mr. Pilini and Mr. Brown involved the loaning of money from the defendant to the plaintiff. Both testified that Mr. Pilini, in consideration for endorsing the notes of customers which were put through a Barre bank, was to receive 6% interest on the various notes, plus an additional 10% for "doing it." It was Mr. Brown's testimony that such 10% was paid by him to Pilini, but, under Pilini's instructions, such payments were made to Pilini in his office, and not at the bank, and ordinarily, in cash. Such testimony was introduced before the Master without objections made by the defendant.

■ An objection to evidence must be made when the evidence is offered, or when the question is asked. Where evidence comes in without objection, all right of objection is waived. No question may be brought to this Court except that upon which it is made to appear that the trial court had a fair opportunity to pass judgment. *L'Ecuyer* v. *State Highway Board,* 124 Vt. 462, 465, 207 A.2d 260.

■ It was also the evidence of the plaintiff that under the terms of the agreement he had made with the defendant that he placed his endorsement upon each of the notes left with the Barre bank, and the exhibits disclose that such endorsement was not specified to be "without recourse." By such endorsement he guaranteed that upon the note being dishonored he would pay the instrument. 9A V.S.A. Sec. 3–414.

Important on the question of whether the decree of the chancellor was correct in allowing Brown ten per cent of the $127,287.75 which was paid by Brown to Pilini as usury is the time payment agreement with Brown, doing business as Bob's Trading Post, and one Joseph Aja, as well as the half sheet showing the amounts received by Brown from Pilini on this transaction. These documents were received in evidence in the case, and both parties agreed that they were typical of other transactions entered into between the parties.

The time payment agreement shows that there was due from Aja to Brown the sum of $1,086.60 when a time balance of $800.00, plus six per cent interest, insurance and handling charges was eventually paid to Brown. But the half sheet, showing the amount that Brown actually received from Pilini on this transaction was $720.00. While it is not apparently disputed between the parties that Pilini was entitled to receive the six per cent interest, as well as the charge for insurance, what is disputed is the "handling charge" of $88.20, which was also retained by Pilini and to which Brown claims he was entitled, it being a usurious interest charge retained by Pilini.

No question of whether such charge made by Brown to Aja constituted usury was made below. In fact, both parties asserted that such charges were customary at the time the conditional sales agreement was made. But Pilini bases his claim to this money on the ground that he was a buyer of commercial paper from Brown, and not a lender of money.

However, as we have already seen, the findings of the master, supported by evidence in the case, and confirmed by the chancellor, were that the transactions between Pilini and Brown were loans of money. The exhibits in the case show that the handling charge, made by Brown to Aja, was exactly ten per cent of the balance due from Aja to Brown, before the interest and the handling charge were added to this balance. While, as we have before noted, both parties agreed that this was a proper charge on a conditional sales contract between seller and buyer, when this handling charge was retained by Pilini from the amount due Brown it amounted to an interest charge to Brown of ten per cent, over and above the legal rate of six per cent which was all that Pilini could legally charge Brown for the loan of money. If, as Pilini contended, he was

merely a buyer of commercial paper, the handling charge could have been retained by him. But we again emphasize that the findings of the master, confirmed by the chancellor, supported by evidence, and upon which the decree is based, are that Pilini was a money lender, and not a buyer of commercial paper, in his relationship with Brown.

The question of whether the transactions between the parties constituted a usurious loan from the defendant to the plaintiff, based upon the facts found, was for the determination of the chancellor. We find no error.

*Decree affirmed.*

**Holden, C.J.,** (dissenting in part). I concur in affirming that part of the decree which calls upon the defendant Pilini to account for the balance remaining in the reserve account. This aspect of the decree allows the plaintiff to recover $7,637.30 with interest of $4,230.23. I dissent from the Court's affirmance of the remainder of the decree which orders the defendant to pay the plaintiff

> "(c) Ten per cent of the sum of $127,-287.75 which was paid by the said Brown to the said Pilini as usury mentioned in Findings Nos. 9 and 10, amounting to     $12,728.77
>
> (d) Interest on said sum of $12,728.77 from April 25, 1958, the date of the Plaintiff's Bill of Complaint to the date of this Decree, September 9, 1968, amounting to the sum of     $8,023.65."

In the first place, the aggregate amount of the payments to Pilini on the combined conditional sales agreement was paid entirely by Brown's customers. Excluding the reserve fund, as the chancellor has done by his decree, no part of the total payment of $127,287.75 was paid by the plaintiff. It was collected from the conditional vendees.

It appears from the plaintiff's own testimony that none of the loans, either as to principal, interest or handling charges, have been paid by the plaintiff. Yet the usury statute in effect at the time of these transactions, provided that when "a greater rate of interest than is allowed by law is paid, the

person paying the same may recover the amount so paid above the legal interest, with interest thereon from the time of payment, in an action of contract on this statute." 9 V.S.A. § 34 (Repealed 1967), No. 377 (Adj. Sess.) § 2 eff. March 26, 1968.

The right to recover under this statute is strictly personal. It is confined to the person who pays the usury. *Lafountain* v. *Burlington Savings Bank*, 56 Vt. 332, 336; *Spaulding* v. *Davis*, 51 Vt. 77, 79; *Lamoille County National Bank* v. *Bingham*, 50 Vt. 105, 106. The persons paying the usury in all of the transactions, represented in the total payments to the defendant, were the plaintiff's customers. Hence, recovery by the plaintiff, who was only secondarily liable on the notes and has parted with no usury, is not permissible under 9 V.S.A. § 34. *Cady* v. *Goodnow*, 49 Vt. 400, 402.

The premise of the majority opinion is that usury resides in the so-called handling, or finance charge, collected by the defendant. Yet, as the majority opinion points out, the parties are agreed that this was a proper charge as between Brown and his customers. Although paid by these same customers, it becomes illegal interest in the hands of the defendant. And it is ordered repaid to one who didn't pay it. This creates an anomaly in the law which I find unacceptable.

Beyond that, at the outset of their dealings it was agreed between the plaintiff and the defendant that Pilini was to receive the handling charges. The plaintiff so testified. The plaintiff first laid claim to the handling charges midway during the trial. The special master called this to his attention as a variance in his prior testimony:—"Mr. Brown, I think you are changing your testimony. You previously testified Pilini was entitled to 6% plus 10% for doing it, which you said was handling charge." After some equivocation, the plaintiff responded: "That was the original agreement, yes Sir." Nonetheless, he then indicated he wished to change his position to claim the handling charge.

The master has made no finding to support the plaintiff's claim that he was entitled to the finance charge. To the contrary, findings 14 and 31 are in accord with the evidence as first stated in the plaintiff's testimony. As I see it, if the handling charge was proper for Brown to collect from his customers, it was an equally appropriate collection in the hands of Brown's assignee.

The conduct of the parties followed this pattern. The total of $28,761.92, which the plaintiff collected from his various customers, was paid over to the defendant with no reservation or withholding of the handling charges.

These considerations persuade me that the chancellor's order, which awards recovery by the plaintiff of payments made by his customers, should not be affirmed. It is not supported by the record and is contrary to the usury statutes in effect at the time such payments were made. I would reverse and vacate paragraph 4(c) and (d) and affirm the other provisions of the decree.

**Shangraw, J.** (dissenting in part). I concur with Chief Justice Holden and desire to add the following comments.

We are only concerned with the 117 conditional sale contracts endorsed and assigned by the plaintiff to the defendant. Any unrelated arrangement which the parties had concerning mortgages, other notes and floor planning, referred to in the majority opinion, is not in issue. Nor are we concerned with transactions had by the parties, or either of them with the Barre Trust Company.

The majority opinion takes the view that the defendant extended to the plaintiff loans on the conditional sale contracts, and that the collection by the defendant of the handling charges constituted usury.

I think it may be said that the defendant was rendering the plaintiff service customarily supplied by finance companies and at least some banks. It has been held that where a finance company buys a conditional sale contract from a dealer it does not create a loan of money, to which usury will attach, where the finance company has no contract whatsoever with the maker of the contract. 91 C.J.S. Usury, section 19(1) page 594. *Pierce* v. *C.I.T. Corporation,* 170 Okl. 633, 41 P.2d 481.

Admittedly, the various jurisdictions are divided on the point as to whether certain similar transactions constitute a loan or a sale.

In referring to the "handling charge" the majority opinion states that "No question of whether such charge made by Brown to Aja constituted usury was made below." In this connection attention is called to 45 Am.Jur.2d, Interest and Usury, section 127, which in part reads:

"It is generally held that a finance or other similar charge in excess of the highest lawful rate of interest included in a bona fide conditional sale contract as a part of the 'time' or credit price is not usurious." Citing, *Commercial Credit Co.* v. *Tarwater,* 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437; *Zazzaro* v. *Colonial Acceptance Corp.,* 117 Conn. 251, 167 A. 734.

I do not propose to venture a judgment as to whether the contracts between the makers and the plaintiff were initially usurious. It must be borne in mind that the makers are not parties to this litigation. Any concessions or admissions made by the parties to this litigation are not binding upon them.

If, by reason of later litigation initiated by the makers, it should be determined that the "handling charge" initially constituted usury, to permit recovery by the plaintiff in this case, might well subject the defendant to further financial jeopardy or liability in favor of the makers of the conditional sale contracts under the provisions of 9 V.S.A. section 34 (Repealed 1967) No. 377 (Adj. Sess.) section 2 eff. March 26, 1968.

By permitting the plaintiff to recover the reserve fund, with interest, which I approve, he will then have received the equivalent of the cash price of the automobile as evidenced by the contracts, also, what he expected and bargained for as evidenced by his statement, "* * * there was nothing coming to me" according to our original agreement.

The plaintiff and his wife characterized the 117 transactions in question as loans from the defendant. This in legal effect did not make it so. Defendant claimed that he purchased the negotiable contracts. Whether the transactions were sales or loans depended upon the real intent and understanding of the parties; the words used by the contracting parties were not conclusive in determining the nature of each transaction, and its form will be disregarded. 45 Am.Jur.2d, Interest and Usury, section 129.

It is my understanding that the plaintiff neither reserved the privilege of redeeming or repurchasing the contracts. They were not endorsed to the defendant as collateral security for the payment of a specified debt.

It is my view that the facts and circumstances negate the conclusion that the relationship between the parties was that

of borrower and lender of money. On the contrary, it is my judgment that defendant purchased the contracts in question and became the sole owner thereof.