STATE of Missouri, Respondent,

v.

Thomas Henry HARRIS, Appellant.

No. 56095.

Supreme Court of Missouri, Division No. 1.

Feb. 22, 1972.

Motion for Rehearing or to Transfer to Court En Banc Denied

March 13, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Joseph Langworthy, Pacific, for appellant.

WELBORN, Commissioner.

Appeal from consecutive three-year sentences for burglary, second degree, and stealing in connection therewith, entered upon jury verdict.

On Sunday, November 2, 1969, between noon and one o'clock, Mrs. Diane Partain noticed an unfamiliar auto—an older model station wagon which she took to be a Valiant—in the driveway of her parents' home. Mrs. Partain lived in a mobile home, some 300 feet from her parents, Jack and Virginia Korte. The station wagon remained in the driveway ten to fifteen minutes. When Mrs. Partain again looked, the station wagon was gone. Her curiosity was aroused because she knew that her parents were not at home and the dogs were barking. Mrs. Partain walked toward her parents' house, but was frightened away by a loud noise in the rear of the house. She returned to her home, from which she could see two men, apparently carrying something, walking toward Interstate Highway 44.

Mrs. Partain called her parents who were at Mr. Korte's mother's, in the vicinity. The Kortes returned to their residence and found that a glass in a back door had been broken and the house entered. They noted that some twelve guns were missing from gun cabinets. A blanket and bedspread were also missing. The Franklin County sheriff's office was called and the officer on duty told what had occurred, including the information about what Mrs. Partain had observed.

The officer, Deputy Sheriff Bruns, relayed the information to the State Highway Patrol. A radio message was sent advising patrolmen that a burglary had occurred in the Pacific area in which a number of guns had been taken, involving a 1962 or 1963 tan Valiant station wagon. Subsequently, information was broadcast that the auto was believed to be proceeding east on Route 66 and was possibly in St. Louis County.

Trooper Hogan of the Highway Patrol heard the broadcast while southbound on Interstate Route 244 in St. Louis County, some 25 miles from Pacific. He noticed what he believed to be a tan 1962 Plymouth station wagon going north on 244 and

he turned his patrol car around and started in pursuit, with siren on and red light flashing. Trooper Welsh, in another patrol car, joined in the pursuit. In the vicinity of the intersection of Route 40 and I–244, the station wagon had a flat tire, pulled onto the left shoulder and stopped. Hogan and Welsh stopped and ordered the three occupants of the station wagon out and placed them under arrest. The occupants were appellant, another man and a woman.

Looking through the windows of the rear of the station wagon, Trooper Welsh saw what appeared to be guns covered by a bedspread. The station wagon was taken to Troop C Headquarters and twelve guns, a bedspread and a blanket taken from the station wagon. The vehicle turned out to be a Dodge Lancer, not a Plymouth Valiant. Trooper Hogan said that the two models were practically indistinguishable in outward appearance. At Harris's trial, the objects from the station wagon were identified, along with a camouflage hat Harris was wearing when arrested, as having been taken from the Korte residence.

Appellant attacks the conviction on numerous grounds, but does not attack the sufficiency of the evidence. The first assignment of error is based upon the overruling by the trial court, without a hearing, of defendant's motion to disqualify the prosecuting attorney. Defendant filed a verified motion, stating that the prosecuting attorney was prejudiced against him. The affidavit stated that defendant believed he could not receive a fair trial. The trial court invited counsel for defendant and the state to submit memoranda on the motion. None was submitted and the court summarily overruled the motion, stating that the relief sought was not provided by statute, Supreme Court rule, or appellate court decision, and that the affidavit stated only a conclusion, not facts.

■ The trial court did not err. A prosecuting attorney who has a personal interest in the outcome of a criminal prose-

cution such as might preclude his according the defendant the fair treatment to which he is entitled should be disqualified from the prosecution of such a case. Section 56.110, RSMo 1969, V.A.M.S.; State v. Jones, 306 Mo. 437, 268 S.W. 83, 85 [1]; State v. Nicholson, Mo.App., 7 S.W.2d 375, 378 [8]; State v. Egan, Mo.App., 272 S.W.2d 719, 726 [15–17]. The motion of defendant in this case alleged no facts from which a finding of such an interest on the part of the prosecutor might have been made. The motion merely advanced the conclusion that the prosecutor was prejudiced and on that account defendant believed he could not receive a fair trial. Such a conclusory statement did not require the court to disqualify the prosecutor. 27 C.J.S. District and Prosecuting Attorneys § 12(6), p. 665. Nor did it require the court to conduct a hearing on the charge. The absence of any factual allegation supporting the action sought, coupled with the failure of defense counsel to support the motion with a written memorandum as requested by the trial court, justify the summary action of that court.

Furthermore, appellant now points to no occurrence during the trial which in any manner demonstrated that the prosecutor failed to discharge his duty fairly. The absence of any such demonstration reinforces the conclusion that the trial court did not err in its ruling. See State v. Bosworth, 124 Vt. 3, 197 A.2d 477, 481–482 [4, 5].

Appellant contends that the trial court erred in overruling his motion for mental examination to determine his fitness to stand trial, under § 552.020, RSMo 1969, V.A.M.S. In support of his motion for examination, appellant offered the following:

1. His testimony that in 1959, upon his discharge from the State Intermediate Reformatory, he had, at the suggestion of the parole board, two sessions with a psychiatrist. No evidence of other reason or of the results, diagnostic-wise, of such session was given.

2. In 1965 or 1966, appellant had an automobile accident, while drinking, and received a head injury requiring 120 stitches. Following that injury he suffered from headaches and blackouts and had difficulty in concentrating and remembering.

3. Since the accident, appellant had been unable to hold a job.

4. He had a drinking problem. His brother described appellant as an alcoholic. On one occasion he went to his attorney's office to confer about the present case. The attorney was unable to see him and requested that he return in an hour. When appellant did so, he was so drunk that he could not confer.

5. Appellant's attorney testified that appellant's view of the charges against him was "very wishful and unrealistic"; he had "something of an irrational approach" to the strategy for defense against the charge; he had "fixed ideas, * * * a little bit beyond what sober judgment would dictate."

The trial court's denial of the motion on the basis of such evidence was not error. The evidence did not require the trial court to conclude that reasonable cause existed for the belief that appellant was unable to participate intelligently in his defense, cooperate with his counsel and understand the proceedings. State v. Lowe, Mo.Sup., 442 S.W.2d 525, 529–530 [4]. Section 552.020, subd. 2, RSMo 1969, V.A.M.S. The appellant's own testimony gave no hint that he was unaware of the nature of the proceedings. Remote unspecific incidents of psychiatric treatment do not compel a trial court to grant a defendant's motion. State v. Lowe, supra. Except for the isolated instance when defendant became intoxicated while waiting to see his attorney, there was no evidence that the blackouts, headaches, or alleged alcoholism in any way interfered with his cooperating with his counsel and assisting in his defense. The generalities expressed by counsel as to appellant's ideas and attitudes showed no lack of ability to assist

and cooperate with counsel. On the evidence before it, the trial court did not abuse its discretion in overruling the motion.

Contrary to the situation in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815, and Brizendine v. Swenson, U.S. D.C., W.D.Mo., 302 F.Supp. 1011, no incident occurred upon the trial which would in any manner cast doubt upon the correctness of the trial court's ruling on the motion. Those cases are of no assistance to appellant.

■ Without restatement, the facts above detailed, leading to the apprehension of appellant, clearly provided reasonable cause for his arrest and for the search of the vehicle in which he was traveling. State v. Ward, Mo.Sup., 457 S.W.2d 701; State v. Smith, Mo.Sup., 462 S.W.2d 425; State v. Wrose, Mo.Sup., 463 S.W.2d 792; Chambers v. Maroney, 399 U.S. 42, 90 S. Ct. 1975, 26 L.Ed.2d 419.

When the trial recessed at noon, the judge admonished the jurors as follows: "Don't talk about the case, don't hear it discussed. If anyone's discussing it nearby, walk away." After the trial had resumed following the recess and continued for more than two hours, defense counsel requested a recess. At that time the court admonished the jury: "Don't talk about the case, don't hear it discussed." At that point, defense counsel moved for a mistrial on the grounds that the trial court's admonition did not meet the requirements of § 546.230, RSMo 1969, V.A.M.S. The motion was denied and the ruling now assigned as error.

■ Section 546.230 requires the court, at each adjournment, to admonish the jury "that it is their duty not to converse among themselves, nor to suffer others to converse with them or in their hearing on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them." The trial court's admonition substantially met the requirements of the statute. Absolute and literal application of § 546.230 has not been required. See State v. Daegele, Mo.Sup., 302 S.W.2d 20, 25 [12, 13]; State v. Ferguson, Mo.Sup., 133 S.W.2d 1023, 1025; see also Morrow v. United States, 8th Cir., 408 F.2d 1390, 1391–1392 [5]. Cases relied upon by appellant—State v. Malone, 333 Mo. 594, 62 S.W.2d 909; State v. Dodson, 338 Mo. 846, 92 S.W.2d 614, and State v. Hayes, 323 Mo. 578, 19 S.W.2d 883—involved improper activities following submission to the jury of the case and are not in point in this case.

■ The trial court instructed the jury "that the fact that there is a charge on file alleging that the Defendant committed a criminal offense is absolutely no evidence of his being guilty of any offense, and the Jury will not regard such charge for that purpose." Appellant offered an instruction which the court refused which would have told the jury that the charge "creates no inference that any offense was committed or that the defendant is guilty." Appellant assigns as error the giving of the instruction and the refusal of his because the instruction given failed to advise the jury that the charge created no inference that any offense had been committed.

Refusal to give defendant's offered instruction was not error. State v. Brown, 115 Mo. 409, 22 S.W. 367. The court gave an instruction which adequately covered the issue and was not required to accept that offered by the defendant. State v. Sallee, Mo.Sup., 436 S.W.2d 246, 253 [13].

■ During the direct examination of Mr. Korte, he was examined regarding a list which he had made of the serial numbers of his guns.

"Q All right, Mr. Korte, this exhibit contains various numbers, some of them are circled and some are not. Do you know how those circles came to be there?

"A Well, when we found the guns were missing I went to my list.

"Q Now, which list are you talking about?

"A This list (indicating).

"Q All right. State's Exhibit 5?

"A Right.

"Q All right.

"A And I circled the ones that I still had and I called them in to the Sheriff and gave—."

Appellant objected to the last statement and asked that it be stricken on the grounds that it was unresponsive. Unquestionably, the remark was unresponsive, but the statement was harmless and could not have prejudiced the defendant. The cases of State v. Foley, 144 Mo. 600, 46 S.W. 733, and State v. Dengel, Mo.Sup., 248 S.W. 603, involved damaging prejudicial, nonresponsive remarks by a witness. Such remarks may constitute reversible error, but the statement here was not of that nature. The trial court's failure to order the statement stricken was at the most harmless error.

 Finally, appellant objects to the trial court's ruling on the opening statement of the prosecuting attorney to the effect that a witness's description of the automobile involved *was* a tan station wagon. Objection at the time was on the basis that the prosecuting attorney was repeating what had been stated before (here appellant says at the preliminary hearing) rather than what the evidence would show. The objection was overruled. Appellant would treat the remark as an effort on the part of the prosecutor to obtain, through his opening statement, the benefit of evidence otherwise inadmissible, as was the situation in State v. Levy, 262 Mo. 181, 170 S.W. 1114, 1117, relied upon by appellant. The statement objected to was not in that category. Obviously, if the prosecutor is to be able to state the evidence which he expects to produce, he must have prior knowledge of what the prospective witness knows. The lapse into the past tense, rath-

er than the future ("will be his description") in stating the import of the witness's testimony cannot constitute an effort to influence the jury in an improper manner. The trial court's ruling was not error.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HOLMAN, P. J., SEILER, J., and PRITCHARD, Special Judge, concur; BARDGETT, J., not sitting.