## Lowell & Austin, Inc. v. Paul Truax and Colleen Truax

[507 A.2d 949]

No. 83-424

Present: **Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed December 20, 1985

*Smith and Craven*, Middlebury, for Plaintiff-Appellant.

*Paradis, Coombs & Fitzpatrick*, Essex Junction, for Defendants-Appellees.

**Peck, J.** This is an appeal by plaintiff, Lowell & Austin, Inc., from an order awarding defendants judgment on a counterclaim in a contract action. We reverse and remand to the trial court with instructions.

Plaintiff instituted this action to recover an amount owed by defendants on a debt they incurred in the purchase of household appliances and other goods and services. Defendants' counterclaim alleged that plaintiff violated the Consumer Credit Protection Act (Act). 15 U.S.C. §§ 1601-1693r (1982). The court below agreed and found that plaintiff violated the Act by failing to comply with its disclosure requirements.

The defendants' counterclaim did not include any allegations of usury, nor was the issue of usury raised, discussed or argued by either party at any time during the proceedings below. Regardless of this, however, and without affording either party an opportunity to be heard in support of, or in defense against, such an issue, the court made a finding that the charges added by plaintiff in its billings to defendants were usurious. 9 V.S.A. § 41(a) (Cum. Supp. 1975). Nevertheless, plaintiff's appeal addresses the usury issue solely on its merits; the court's right to make the finding without giving the parties an opportunity to be heard is not challenged. Accordingly, we will also address the usury issue solely on its merits. We agree with plaintiff that the court erred in its application of both the federal act and the Vermont usury law to the facts of this case.

In 1975 defendants purchased household goods and appliances from plaintiff. Plaintiff billed defendants for the goods sold and for installation services, demanding payment of $3,531.68. It was plaintiff's usual practice not to extend credit. Nevertheless, the court found that while it was not plaintiff's usual practice, it did extend credit in this case. In extending credit, plaintiff charged defendants 1½% per month, or an annual percentage rate of 18%, which was referred to on some of plaintiff's billings as a "service" or "finance" charge. Over fifty such charges were billed to defendants' account. Defendants paid plaintiff $2,700.00, some of which was credited to the finance charges and some to principal.

## I.

■ Plaintiff first claims the court erred when it applied the federal Consumer Credit Protection Act to this transaction. The court below held that plaintiff violated the Act by failing to provide general disclosures, 15 U.S.C. § 1631, disclosures of credit terms, 15 U.S.C. § 1638, and by failing to issue the prescribed periodic statements, 15 U.S.C. § 1636. However, for these provisions to apply the plaintiff must be a "creditor" under the Act.

Prior to October 1, 1982, the Act provided:

> The term "creditor" refers only to creditors who *regularly* extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required
> . . . .

15 U.S.C. § 1602(f) (1976) (emphasis added) (amended 1982). Now see Regulation Z, 12 C.F.R. § 226.2(a)(17)(i) (1985). This definition of creditor is meant to exempt isolated and incidental transactions. *Eby* v. *Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir. 1974).

■ Given the trial court's unchallenged findings of fact in this case, it cannot be said plaintiff was a creditor under the Act. The court found that it was *not* plaintiff's usual practice to extend credit. Thus, while plaintiff may have extended credit in this case, the court below found, in effect, that plaintiff was not one who *regularly* extends credit. Unless plaintiff regularly extends

credit it is not a "creditor" under the Act. Accordingly, we hold that the court erred in applying the Consumer Protection Act.

## II.

Plaintiff claims next that the court erred in finding usurious the monthly amounts billed to defendants over and above the balances due. The question is to be resolved by an inquiry into the intended scope of the controlling portion of the legal rate statute in effect at the time of the sales transaction between the parties. 9 V.S.A. § 41(a) (Cum. Supp. 1975). To the extent it is relevant to the case before us, this statutory subdivision read: "[T]he rate of interest or the sum allowed for forbearance or use of money shall be $8.50 for $100 for one year . . . ." It is not in serious dispute that the charges, referred to in one of plaintiff's bills as a "service" or "finance" charge, exceed the legal rate allowed if the usury law is applicable.

In *Brown v. Pilini*, 128 Vt. 324, 332, 262 A.2d 479, 483 (1970), the majority held that the defendant, Pilini, as assignee of certain conditional contracts, which he discounted at a rate in excess of the legal loan rate, was a lender, and, therefore, subject to the usury law. Two Justices disagreed, expressing the view that the defendant was a purchaser. *Id.* at 332, 262 A.2d at 483 (Holden, C.J., dissenting); *id.* at 334, 262 A.2d at 485 (Shangraw, J., dissenting). Notwithstanding these divergent views, all of the Justices appear to have been in agreement that, "[i]f, as [defendant] contended, he was merely a buyer of commercial paper, the handling charge could have been retained by him." *Id.* at 331-32, 262 A.2d at 483.

The general law, which conforms to the quotation above from *Brown*, is stated in Corpus Juris Secundum:

> It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he sees fit, and such a sale, if bona fide, cannot be usurious, however unconscionable it may be . . . .

47 C.J.S. *Interest & Usury* § 124(a).

These statements are, of course, the merest tip of a deep and jagged legal iceberg upon which many attempts to circumvent the usury laws have foundered under both the criminal and civil law. See *Brown, supra; State* v. *Bosworth*, 124 Vt. 3, 197 A.2d 477

(1963). The *Brown* case, with its strong dissents, also demonstrates the narrow lines which must sometimes be drawn between a loan on the one hand, and a legitimate sale and purchase with terms on the other, as well as the disturbing possibility that reasonable persons, though equally well-trained in the law, may disagree on a specific transaction. However, courts are in general agreement that the true nature of a given transaction is not to be determined by what it is called, that is, by its form alone, but by all of the surrounding circumstances. *Brown, supra*, at 329-30, 262 A.2d at 482; *Bosworth, supra*, at 7-8, 197 A.2d at 480; 47 C.J.S., *supra*.

■ Notwithstanding the caution with which alleged usury violations must be examined, we hold that the transaction between the parties in the instant case was not within the scope of the legal rate laws as they existed at that time; therefore, the trial court erred in concluding that there had been an overpayment by defendants based on usurious interest charges.

■ Whether the charges billed to defendants by plaintiff over and above the basic price are called interest or something else is not controlling, although on one of the latter's billheads they were referred to as service or finance charges. But just as one may be a creditor, per se, without being a creditor for purposes of the Consumer Protection Act, so a charge may be called interest, accurately or not, without necessarily becoming interest under the legal rate statute. In the absence of legislation to the contrary, the elements which together constitute usury are: a *loan* or forbearance of money, or its equivalent; an understanding that the loan is to be returned; and an unlawful intent to exact, for the use of the loan, an amount of money, or something else of value, in excess of what is permitted by law. *Farmland Enterprises, Inc.* v. *Schueman*, 212 Neb. 342, 345, 322 N.W.2d 665, 667 (1982); *Western Auto Supply Co.* v. *Vick*, 303 N.C. 30, 37, 277 S.E.2d 360, 366 (1981); *Beneficial Finance Co.* v. *Kitson*, 530 S.W.2d 497, 502 (Mo. Ct. App. 1975).

In its finding on the issue of intent, the trial court stated: "The Plaintiff's conduct regarding this credit transaction was intentional and not as a result of an innocent mistake." However, the question is not whether the plaintiff intended to make the charges it did, but whether an intent was present to exact from defendants an amount in excess of what was permitted by law. In other words was there an unlawful intent?

In order to make such a finding it was necessary that the court would also have had to find that the charges were, in this case, not only in excess of the statutory legal rate, but based on either a loan or forbearance of money.

■ We think it is clear that there was no forbearance. In usury law, forbearance means a contractual obligation on the part of a creditor to forbear for a specified period of time any requirement that his debtor make payment of an existing debt then due and payable. *Farmland Enterprises, Inc., supra,* at 349, 322 N.W.2d at 669; *Western Auto Supply Co., supra,* at 39, 277 S.W.2d at 367; *Meyer* v. *Mack Sales, Inc.,* 645 S.W.2d 493, 495 (Tex. Civ. App. 1982). The record discloses no such agreement on the part of the plaintiff; quite the contrary, plaintiff sought payment on a regular monthly basis for a considerable period of time. There was never a point in time prior to the commencement of this action at which plaintiff could not have instituted judicial proceedings for recovery of the debt.

■ There remains to be resolved then only whether the cost of the goods and services provided by plaintiff constituted a *loan* to defendants to be *repaid* at no more than the legal rate of interest then prevailing under the usury law. We have examined the record carefully, including the transcript, and find nothing upon which the trial court could base a legitimate finding that a "loan" was ever intended or existed in fact or in law. Therefore, this transaction did not fall under usury law.

*Reversed and remanded to the trial court for computation of the total amount due plaintiff from defendants, and an entry of judgment in accordance therewith in favor of the plaintiff.*