# State of Vermont v. Earl D. Miner, Sr.

[258 A.2d 815]

No. 1271

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*James W. Wright,* Special Prosecutor, for the State.

*Peter P. Plante,* for Defendant

**Holden, C.J.** The respondent has been tried and found guilty of murder in the first degree. The victim of the homicide was the respondent's wife, Bonnie Anderson Miner, who died of multiple gunshot wounds on January 24, 1967, the date of the alleged offense. The case was vigorously tried below. It has been thoroughly presented on appeal.

The indictment was returned March 22, 1967. At the time of arraignment the respondent was represented by Joseph M. O'Neill, Esquire. The respondent pleaded not guilty and not guilty by reason of insanity. Later, on May 5, 1967, Peter P. Plante, Esquire, of the law firm of Black and Plante, was assigned by the Windsor County Court to represent the respondent.

At the time of this assignment, and for a brief period thereafter, Frank G. Mahady, Esquire, a member of the bar of this State, was an associate in the law offices of Black and Plante. While so engaged, Mr. Mahady assisted in the preparation of the defense of the respondent under the supervision of his senior associate, Mr. Plante.

On August 14, 1967 Mr. Mahady was appointed an assistant attorney general of Vermont. Before that time the attorney general had appeared with the state's attorney of Windsor County representing the State in the preliminary investiga-

tion and proceedings before the grand jury, consistent with the provisions of 3 V.S.A. § 157.

On August 25, 1967 the respondent requested a postponement of the trial and moved that the trial court order the disqualification of the attorney general's office from further participation in behalf of the State in the prosecution of this cause. The motion states that Mr. Mahady had worked closely with respondent's counsel in the case, had interviewed the respondent on different occasions at his place of confinement and was completely familiar with the theory of the defense.

Before the trial court ruled on the motion, the attorney general requested permission to withdraw from further participation in behalf of the State. The motion states:

"2. That even though said Frank G. Mahady has, since being employed as an Assistant Attorney General, neither had, nor would have, any connection whatsoever with said cause, in the interests of assuring the Court, the defendant and his counsel that no conceivable advantage could accrue to the State from the fact of said engagement and in the interests of avoiding any possible future claim that the State had such an advantage and that defendant's trial was in any way unfair, it is requested that the foregoing motion be promptly granted;"

Permission to withdraw was granted to the attorney general's office on September 25, 1967. Shortly before trial the respondent moved to quash and dismiss the indictment because of Mr. Mahady's participation in the defense and his subsequent employment as assistant attorney general.

Following a pretrial hearing on the motion, the trial court filed findings of fact. The facts reported on this aspect of the case are not questioned by the respondent. The court determined that Frank G. Mahady, Esquire, upon entering service in the office of the attorney general, was assigned to the opinion and appeals division. In addition to facts previously stated, the findings report:

5. That upon the employment of Atty. Frank G. Mahady as Assistant Attorney General, all other members of the staff of the Attorney General's office were instructed not to discuss at any time in any manner any case in which

the law firm of Black & Plante, or one of their partners, appeared as counsel, and specifically, all members were instructed not to discuss the case of the State of Vermont vs Earl D. Miner, Sr.; and the Court further finds that Attny. Frank G. Mahady has not had access to any file in the Attorney General's office involving any case in which Black & Plante, or one of their partners, appeared as counsel, nor has the said Atty. Frank G. Mahady discussed the case of State of Vermont vs Earl D. Miner, Sr. with any member of the staff of the Attorney General's Office since the date of his employment with that office.

6. That Windsor County States Attorney James W. Wright has worked in close relationship with the Attorney General's office through the person of Assistant Attorney General Hilton H. Dier, Jr., in the preparation of the case for trial; however, at no time has the States Attorney conferred with Atty. Frank G. Mahady relative to the preparation of the case since his employment in the Attorney General's office;

7. That since the date of September 25, 1967, wherein the Court granted the Attorney General office's motion to withdraw from further participation in the case of State of Vermont vs. Earl D. Miner, Sr., that the Windsor County States Attorney James W. Wright has conducted his further investigation and preparation for trial of the case without the assistance of anyone in the Attorney General's office;

8. That at all times material, Atty. Frank G. Mahady has observed the canons of professional ethics as relates to communications between clients and their counsel, and at no time has he divulged any information, which he obtained in the preparation of the case, to the State of Vermont or any member of the Attorney General's office, or the person of the Windsor County States Attorney, James W. Wright.

9. The Court further finds that at all stages of the proceedings the respondent has been represented by able

and competent counsel, and that his rights to a fair and impartial trial have been protected at all stages of the proceedings.

On the strength of these factual determinations, the motion to dismiss the indictment was denied. The correctness of this order presents the first question for our review.

It is of first importance, in resolving this claim of error, that there is no indication in the record that the confidential relationship which was established between the respondent and the law firm of Black and Plante was violated in any way. None has been claimed, either at the trial or in this appeal.

Nonetheless the respondent contends—"(t)he fact that the confidential information was not used and the absence of any adverse instances on the part of the attorney accepting such employment or the person employing him is immaterial." He lays claim to the assumption that the sequence of Mr. Mahady's employment by adverse interests encroached upon his right to a fair trial. And the respondent points out that only he can waive the privilege of his communications with his counsel and the fact that the attorney general's office withdrew from the prosecution does not affect the privilege.

The precept that an attorney scrupulously avoid representing conflicting interests and hold inviolate the confidence and secrets entrusted to him by his client are not open to question. The attorney's obligation in this respect has been defined by former Chief Justice Cleary, writing for the Court in In re Themelis, 117 Vt. 19, 23:

"He should refrain from accepting any employment which may require him to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and where he may be called upon in his new relation, to use against his former client, any knowledge or information acquired through his former connection. Paramount duties of a lawyer are to see that justice is done, to aid in its administration, to assist in preserving the dignity and authority of the court before the public and to keep the trust and confidence that a client has placed in him."

██ Fidelity to these standards prohibits an attorney from engaging in a criminal proceeding against an accused he has formerly represented in the subject matter of the prosecution. But a conflict of this consequence will not bar the State, as distinguished from a disqualified representative, from protecting the public interest. Other counsel who have not been subject to any conflict may appear for the State where the prosecutor's function can be performed impartially and free from any breach of privileged communications. See *People ex rel Livers* v. *Hanson*, 290 Ill. 370, 125 N.E. 268, 270.

██ The shield of privilege sometimes runs counter to the law's great purpose to ascertain the truth. *Baird* v. *Koerner*, 279 F.2d 623, 95 A.L.R.2d 303, 314. The application of the rule should not exceed the reason for the privilege nor the policy which brought it into being. *Foster* v. *Hall*, 29 Mass. (12 Pick.) 89, 97 (Shaw, C.J.); *In re Selser*, 15 N.J. 393, 105 A.2d 395, 402.

██ The design and force of the rule is against disclosure. On that issue, all are agreed that the seal of secrecy has not been broken; no confidence has been betrayed and the privilege is observed. In this situation, the State is entitled to proceed, free from the disqualifying interest of one of its employees.

Mr. Mahady's appointment to the attorney general's staff occurred several months after the indictment was returned, and there is no suggestion that he had any part in its procurement. The denial of the motion to dismiss the presentment was without error. And since there is no question that the respondent's privileged communications with Mr. Mahady were faithfully observed and kept throughout the trial, the claim that his right to a fair trial has been impaired by Mr. Mahady's employment by the State of Vermont is without merit.

When the case went to trial, the state's attorney called Joseph Holiday, an agent of the Federal Bureau of Investigation. He testified that in the evening of January 24, 1967 he received a telephone call at his home in Brattleboro, Vermont. Over the respondent's objection the court received evidence from this witness that the communication from the caller was:

"This is Earl Miner, 41 White Street, Springfield, Vermont. I have committed a murder and I want the F.B.I. to investigate the matter.—I don't want the local police to investigate."

The witness advised the originator of the call that the F.B.I. did not investigate murders and that he would refer it to the proper authorities. When the person calling again voiced his objection to the local police, the witness informed him he would refer it to the state police. The respondent's motion to strike the evidence was denied.

Agent Holiday had previously testified that he did not know the respondent personally and had no contact with him prior to the call. Agreeing that identity was insufficiently established by this witness, the State defends the ruling on the strength of other evidence of authentification which had been previously received. The record sustains the State's position on this point.

Two other witnesses, who preceded the federal agent on the stand, testified they were present in the Miner home on January 24, 1967 when the respondent made a telephone call. Anthony Johnson, the respondent's brother-in-law testified— "I think he did call the F.B.I.—and he said something about there had been a murder committed in his home." The other witness, Marie Johnson, the respondent's sister, testified that in the telephone conversation her brother gave his name and address and "said there had been a murder in his home or something like that."

██ The respondent's telephone conversation with the witness Holiday was sufficiently authenticated by these by-standers to sustain its admission, although these witnesses could not identify with certainty the receiver of the call. *City Electrical Service & Equipment Company* v. *Estey Organ Company*, 117 Vt. 318, 319. By the same token, these witnesses were qualified to report the respondent's utterances made in their presence, although they did not ascertain to whom the statements were made. *McCarthy* v. *Peach*, 186 Mass. 67, 70 N.E. 1029, 1030; Wigmore, Evidence §§ 669, 2155 (Rev. Ed.); 29 Am.Jur:2d, Evidence § 384.

■■ The testimony of Arnold Johnson bears on another question presented in this appeal. Well in advance of trial, by appropriate motion, assigned counsel availed the respondent of extensive discovery of the State's evidence under the provisions of 13 V.S.A. §§ 6721–6727. The motion, which opened up the discovery process, included a request for a verbatim transcript of the testimony presented to the grand jury. This was the only request for disclosure that was denied. At that stage of the proceedings the request for a copy of the grand jury proceedings was addressed to the discretion of the trial court. *State* v. *Goyet,* 119 Vt. 167, 170; *State* v. *Truba,* 88 Vt. 557, 561; See also 13 V.S.A. § 5605. In view of the broad discovery afforded the respondent, including the depositions of the principal witnesses who appeared at the grand inquest, no error is shown in the denial of the initial request for the transcript.

The request was reasserted about two weeks before trial. The reasons advanced were that a transcript of the grand jury proceedings was necessary to enable the defense counsel to properly cross-examine all prosecution witnesses, to impeach a witness and to test credibility. The motion was again denied.

The Johnson witnesses were important for they were summoned to the respondent's home shortly after the death of the victim. Understandably, the respondent's sister and her husband were reluctant, if not hostile, to testifying against the respondent in the examination conducted by the state's attorney.

In questioning Arnold Johnson, the state's attorney made frequent references to his testimony at the grand jury's inquest. Some of the record of that proceeding was read in the presence of the jury at the trial during the prosecutor's interrogation of this witness.

■■ The State is not held to the same rules against impeaching the witnesses it calls in a criminal prosecution that apply to private litigants. The reasons for the rule are fully explained in *State* v. *Slack and Clough,* 69 Vt. 486, 488–491. Accordingly, the prosecution was at liberty to refresh the recollection of these witnesses or impeach them,

if necessary, by reference to prior testimony at the inquest by the grand jury. *State* v. *Searles,* 108 Vt. 236, 239.

After the state's attorney resorted to this method of handling the witness, respondent's counsel again requested permission to examine the minutes of the grand jury proceedings with reference to this witness' testimony. The motion was again denied.

The history and reasons for the rule against disclosure of grand jury proceedings are stated in Chief Judge Ross' opinion in *State* v. *Brewster,* (1898) 70 Vt. 341. The objectives underlying the rules are summarized to be (1) to insure freedom from outside influence for the jurors in their deliberations, (2) to similarly protect witnesses who are called upon to appear and to promote free and untrammeled testimony at the inquest and later at the trial, (3) to protect persons presented but not indicted, (4) to avoid flight by the accused from premature disclosure of the accusation about to be presented against him. *State* v. *Brewster, supra,* 70 Vt. at 345 *et seq.*

The question in the *Brewster* appeal was whether the presence of a stenographer who took and transcribed the testimony presented to the grand jury, prior to the enactment of 13 V.S.A. §§ 5603–5606 (1898, No. 45) was cause to abate the indictment. The court's consideration of that issue developed this rhetorical question: "But on the presumption, which exists until the truth of the charge is fully established by the verdict of the traverse jury, of the innocence of the accused, why should he not have an equal opportunity with the State to know and to prepare to meet, contradict and explain the testimony brought against him?" *State* v. *Brewster, supra,* 70 Vt. at 348.

 In the present case the grand jury's function had been completed and trial was underway. The State had advanced no reason why the interest of justice would be served by preserving secrecy. The prosecution had utilized the records of the inquest to elicit critical evidence. In these circumstances the answer is clear. The accused should have been afforded the equivalent opportunity of access to the prior testimony of the witness which was brought to bear at his subsequent appearance at the trial. *Dennis* v. *United States,* 384 U.S. 855,

16 L.Ed. 973, 985 (1966). Compare, *State* v. *Goyet*, 119 Vt. 167, 170. See also Discovery and Procedure Before Trial, § 2.1(a)(iii), American Bar Association Project on Minimum Standards for Criminal Justice, (Tentative Draft, May 1969).

For the purpose of affecting the credibility of Marie Johnson, the state's attorney inquired of the witness if she had been convicted of the crime of burglary on December 17, 1956. The witness gave no direct answer. She was later asked if she had served some time in the Women's Reformatory at Rutland. Over the defendant's objection, the witness answered: "Yes. It wasn't on burglary."

Up to this point the requirements of 12 V.S.A. § 1608, governing evidence affecting credibility, had not been complied with. The question was improper. It was error to receive the answer. Respondent's counsel then requested the court to require the State to produce the record of conviction or strike the evidence and instruct the jury to disregard it. The court allowed the answer to stand, subject to the prosecution's production of the documentary evidence. Later in the trial the prosecution produced copies of the record of conviction which were certified by the commissioner of public safety and the director of public records.

The superintendent of the identification and records division of the department of public safety is required to maintain a record of all convictions of criminal offenses in the courts of this jurisdiction. The commissioner of public safety is authorized to certify such records as competent evidence in the courts of this State. 20 V.S.A. § 2018. And we take judicial notice of the transitional order which transferred the records of the Bennington Municipal Court to the custody of the director of public records in the transition from the municipal to the district court system under the authority of 1965, No. 194 § 13. Transitional Order No. 4, January 13, 1967. These records were properly received in evidence. 12 V.S.A. § 1691; 20 V.S.A. § 2018, *supra*. The original error was cured by substantial compliance with 12 V.S.A. § 1608. See *Pond* v. *Carter*, 126 Vt. 299, 307. The respondent's motion for mistrial on this point was properly denied.

The prosecution rested without presenting evidence that the respondent was sane at the time of the offense. The re-

spondent moved for a directed verdict. One of the reasons, assigned in support of the motion, was that the State had failed to sustain its burden of proof on the sanity issue.

When evidence appears in a criminal prosecution to indicate the respondent did not possess the requisite mental capacity to make him criminally responsible, it becomes the duty of prosecution to establish the respondent's sanity as an essential ingredient of the crime. *State* v. *Warner*, 91 Vt. 391, 393. In this instance, no expert evidence had been presented at the time of the motion. However, there was evidence of the respondent's strange conduct and appearance after the death of his wife. Mrs. Johnson testified that, in her opinion, her brother didn't know what he was doing, that he was "out of his mind." There was other evidence of his strange behavior. Insubstantial as it was, this evidence had competent bearing on the respondent's mental condition within the witness' observation during the time under inquiry. *In re Moxley's Will*, 103 Vt. 100, 107.

When the trial court indicated its concurrence with the respondent's position regarding the burden of proof, the state's attorney requested permission to reopen the State's case to present evidence on this issue. The request was granted. We think rightly so.

The defense was introduced by the respondent. The proper administration of criminal justice required the resolution of the issue should not be foreclosed at this stage of the proceedings. The converse effect in the granting of this aspect of the respondent's motion would have amounted to an adjudication that the respondent was not guilty, by reason of insanity, on the uncertain testimony of an interested lay witness. By implication, the ruling would have precluded the question of innocence on his unrestricted plea of not guilty. In the circumstances, such a ruling would have been unfair to the interests of the State, as well as to those of the respondent.

Even in a criminal action, the order of proof is in the discretionary control of the trial court. *State* v. *Tatko*, 119 Vt. 459, 463. The matter was correctly handled by the presiding judge in allowing the State to present evidence on this issue.

■ The remaining reasons advanced in support of the motion for a directed verdict were properly denied. Contrary to the respondent's contention, the evidence of the respondent's guilt was not entirely circumstantial. This removed the requirement that the proof exclude every reasonable hypothesis other than guilt. *State* v. *Tatko, supra,* 119 Vt. at 465; *State* v. *Marston,* 82 Vt. 250, 251.

■ In passing on the motion, the court was called upon to review the facts before it in a light favorable to the prosecution. *State* v. *Woolley,* 109 Vt. 53, 63. And the undenied admission by the respondent that he had committed a murder, with the other evidence in the case, brought the quality of proof well beyond suspicion and mere conjecture. Denial of the respondent's motion for acquittal was well founded on the facts and sound in law.

We turn lastly to the most critical question of this appeal. After arraignment on motion of the State, the magistrate committed the respondent to the custody of the superintendent of the Vermont State Hospital for examination as to his sanity. On January 27, 1967 he was examined by George Brooks, M.D., a state psychiatrist and assistant superintendent of the hospital. Dr. Brooks was called upon by the prosecution to testify concerning his conversation with the respondent at this examination.

It appears from the transcript of the preliminary hearing, held out of the presence of the jury, that only the respondent and the state's witness were present during the interview. Dr. Brooks testified the conversation with the accused was conducted without any threat or promise on his part. The psychiatrist also stated that the information imparted by the respondent was "(v)olunteered in back and forth conversation."

Over the respondent's objection, which cited *Miranda* v. *Arizona,* 384 U.S. 436, the trial court permitted the witness to relate his conversation with the respondent on January 27, 1967.

In the course of this conversation the respondent, in answer to the psychiatrist's inquiry of why he was there, replied he was there because he shot his wife. He told the doctor that he intended to frighten her but that she started to run. "He

said, if she hadn't started to run, he wouldn't have shot her." He said he wanted to come to the state hospital because he thought something was wrong with him.

The state's attorney defends the ruling on the contention that the evidence was not offered as proof of guilt, but merely to indicate the extent of the psychiatrist's examination as a basis of his opinion on the sanity issue. The record does not bear him out.

The trial court observed no distinction in the respondent's telephone conversation with the witness Holiday and his communications with the psychiatrist. The jury was instructed that the statements to Dr. Brooks "constitute admission that he had committed the act of killing Bonnie Anderson Miner." And the jury was charged that these statements could be considered as evidence of his guilt.

The incriminating statements contained in the testimony of the state psychiatrist are now forbidden by statute. The 1969 enactment provides that when an accused is examined to determine his sanity at the time of the alleged offense or his competency to stand trial—"(N)o statement made in the course of the examination by the person examined, whether or not he has consented to the examination, shall be admitted as evidence in any criminal proceeding for the purpose of proving the commission of a criminal offense or for the purpose of impeaching testimony of the person examined." 13 V.S.A. § 4823(c), 1969, No. 20, § 3, effective July 1, 1969.

The purpose of the enactment is clear. It is to promote objective examination by removing the danger that communications made by an accused to a psychiatrist, in the course of clinical testing, will be called upon to do service as evidence of guilt under the protection of the sanity issue. See *State* v. *Stacy*, 104 Vt. 379, 400.

There is a competing policy against giving a statute, which changes a rule of evidence, retrospective effect. *Giddings* v. *Turgeon*, 58 Vt. 106, 112. And the recent enactment fixes the time for its prospective effect.

In this instance the respondent was in custody at the request of the State and by order of the court. The privilege of silence was not explained and no warning was given that

his statements might be used as evidence of guilt in the event he was brought to trial.

This appeal does not present the setting of *Miranda* v. *Arizona, supra.* The testing in a mental hospital to determine the issue of sanity is hardly the equivalent of questioning an accused in the station house to extract a confession of guilt. The purposes of the interrogations are entirely different. But the constitutional command is the same.

"The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in *Twining* (*Twining* v. *New Jersey,* 211 U.S. 78), for such silence." *Malloy* v. *Hogan,* 378 U.S. 1, 12 L.Ed.2d 653, 659.

■■■ The penalty of silence in the clinical testing for mental competency or criminal responsibility is the stifling of the examination. This result is against the interests of the respondent and the State alike. The inducement toward full disclosure to the examining psychiatrist is real and compelling. Incriminating facts spoken by the accused in such consultation cannot be used to establish his guilt against his protest.

■■■ A statement that is freely and voluntarily given, without any compelling influence, is admissible in evidence. But in dealing with admissions obtained through interrogation of one accused of crime, instituted by representatives of the State, adequate observance of constitutional commands requires the person interrogated be informed of his right to silence. And he must be further warned that any statement he does make may be used as evidence against him. *Miranda* v. *Arizona, supra,* 16 L.Ed.2d at 706. The rule of that decision extends to varying situations where the person is in custody or "otherwise deprived of his freedom in any way." *Orozco* v. *Texas,* 394 U.S. 324, 22 L.Ed.2d 311, 315; *Mathis* v. *United States,* 391 U.S. 1, 20 L.Ed.2d 381, 385.

■■■ The respondent's conversation with the state psychiatrist in the circumstances presented are proscribed by

boundaries imposed in our federal and state constitutions. U.S. Const. Amend. V and XIV; Vt. Const. Ch. I, Art. 10. We hold it was reversible error for the trial court to permit the prosecution to circumvent the respondent's privilege against testimonial self-incrimination by introducing his inculpatory statements, obtained without warning, in the course of an inquiry, privately conducted at the instance of the State. *People* v. *Waterman*, (1961), 9 N.Y.2d 561, 175 N.E.2d 445, 90 A.L.R.2d 726, 731.

■■■ The prosecution argues that the evidence is harmless because of the respondent's telephone call to Agent Holiday. The denial of a fundamental right is seldom regarded as harmless error. *Shapiro* v. *Gore*, 106 Vt. 337, 339. A federal constitutional error can be held harmless only if the court is able to declare its belief, beyond reasonable doubt, that the shortage has not adversely affected the accused. And the conviction must be supported by overwhelming evidence of guilt. *Harrington* v. *California*, 395 U.S. 250, 23 L.Ed.2d 284, 288; *Chapman* v. *California*, 386 U.S. 18, 24.

The evidence to which the State refers admits of an unlawful killing. The details of the offense, sufficient to constitute first degree murder, were not reported to Agent Holiday. The operation of the respondent's mind and the background of the homicide, bearing on the element of premeditation, were not revealed by him except for his statements to Dr. Brooks. This evidence could well have been controlling with the jury in their deliberation of the degree of the offense. We are not persuaded the error was harmless. Since the conviction does not conform to the established law, a reversal is required to afford a new trial on the indictment.

The remaining claims of error concern questions not likely to arise in the same context on retrial. All, save one, require no further treatment in this review.

Because of the importance of the remaining exception and its concern with criminal discovery procedure, we think its consideration is appropriate. The respondent requested the court to direct the prosecution to furnish him with a list of the witnesses the State intended to rely upon in support of the indictment. The motion was granted and a list was submitted to the defense. It appears that the first two witnesses

called by the state's attorney were not permitted to testify because they had not been previously listed. The trial court denied the State's request to certify the ruling to this Court for intermediate review as provided in 12 V.S.A. § 2386.

Thereafter and during the progress of the trial, the state's attorney resorted to a petition to this Court for a writ of prohibition as a remedy to overcome the effect of the prior rulings of the county court. The resort to this procedure by the prosecution, in connection with discovery, is not without some precedent. See *Reed* v. *Allen,* 123 Vt. 202, 209. The State's petition was sent to the chief justice with copies provided for the presiding judge and defense counsel. Because of the extraordinary nature of the application, and its possible effect on the progress of the trial, the chief justice notified the petitioner that he would not issue a show cause citation without prior consideration by the entire Court. With this, the petition was withdrawn without interruption of the trial. And we cannot find that the witnesses proposed by the State were further called upon.

Despite this result, the defense invoked the incident as one of the several grounds of its motion for a mistrial. The purpose of this ground of the motion is not clear. Apparently the lower court's ruling in favor of the respondent in excluding the testimony remained unchanged. And when the appeal came on for oral argument, defense counsel, in the presence of the respondent, abandoned all claim of prejudice in this Court. However, since the point concerns an important question which could arise on remand, it deserves attention.

The problem of applying sanctions to enforce a discovery rule or order, of necessity, engages a wide discretion on the part of the trial court. When the prosecution summoned witnesses which it had not previously disclosed, it was essential for the lower court to consider the reason why these persons were not listed, how their testimony would contribute to the merits of the cause and any adverse effect the ruling might have as to either the prosecution or the defense. If the testimony was critical, the court might well have considered a postponement of the testimony of these particular witnesses to afford the defense an opportunity to examine them by deposition without unduly delaying the

progress of the trial. 13 V.S.A. § 6721 is broad enough to permit this procedure, where a full continuance is not feasible.

In confronting the problem, the first concern of the court should be the search for the truth, consistent with procedural due process. A sanction which impedes that objective is at war with the very purpose of discovery—to implement the achievement of an expeditious and just result. See Fed. R. Crim. P. 169 (1968); Standards Relating to Discovery and Procedure Before Trial, A.B.A. Project § 4.7 (Tent. Draft). These points were not advanced when the witnesses Hake and Butterfield were prohibited from testifying. Should the rule of the first trial be called upon again, it should be reconsidered according to the standards here stated.

*Judgment reversed and cause remanded.*