RALPH A. PISA *vs.* COMMONWEALTH.

Suffolk.    May 9, 1979. — August 9, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Attorney at Law,* Conflict of interest. *Conflict of Interest. District Attorney.*

Where a lawyer, while he was a law student, assisted a criminal defendant's counsel in preparing a memorandum of law in support of the defendant's motion for a new trial, and, after passing the bar examination and joining the office of the district attorney, did minor and inconsequential work on the Commonwealth's brief in the defendant's appeal from the denial of his motion for a new trial, the conduct of the lawyer, although improper, did not require that the defendant be granted relief by writ of error in the absence of any showing that he was prejudiced by the impropriety. [726-731]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on October 27, 1977.

The case was heard by *Abrams,* J., on a master's report.

The case was submitted on briefs.

*Ralph A. Pisa,* pro se.

*John J. Droney,* District Attorney *& William L. Pardee,* Assistant District Attorney, for the Commonwealth.

*John Cavicchi,* amicus curiae.

BRAUCHER, J. In *Commonwealth* v. *Pisa,* 372 Mass. 590 (1977), we ordered that the defendant's conviction of murder in the first degree be reduced to a verdict of guilty of murder in the second degree. That decision was without prejudice to any remedy for an alleged conflict of interest on the part of one of the prosecuting lawyers. *Id.* at 598 n.6. The defendant then sought relief by writ of error, and a single justice of this court confirmed a master's report recommending that the judgment, as previously reduced by this court, be affirmed. The defendant appeals, and we affirm the denial of relief.

The homicide took place in 1969, and the defendant was convicted in 1970. One White was tried separately in 1971 for the same homicide, and his conviction of murder in the second degree was affirmed in *Commonwealth* v. *White*, 363 Mass. 682 (1973). The defendant's motion for a new trial was heard in the Superior Court in 1973 and denied in 1974. In 1977, after the decision of this court on appeal from that denial, the defendant filed a petition for a writ of error, and a single justice of this court referred the matter to a special master.

We summarize the master's findings. In 1973 the lawyer in question, then a law student, worked as a research assistant for the defendant's counsel, preparing a memorandum of law in support of the defendant's motion for a new trial. He had access to the defendant's file and was present at discussions between the defendant and his counsel, but had no knowledge of the case that was not disclosed in the proceedings on the motion. In the fall of 1974, after passing the bar examination, the lawyer joined the office of the district attorney in Middlesex County, and informed those in charge that he could not write briefs in certain cases, including the Pisa case.

In May, 1976, an assistant district attorney was writing the Commonwealth's brief in Pisa's appeal to this court.[1] She asked the lawyer to proofread the typed manuscript for typographical and grammatical errors and to check citations. He did so. He provided no confidential information, did no research, and made no changes. The typing was completed on Friday, June 4, 1976, the day the brief was to be filed, and it was checked and printed the same day. The following Monday the assistant district attorney and the lawyer learned for the first time, as a result of an inquiry from defendant's counsel, that both their names had been printed on the brief. The assistant district attorney told defendant's counsel that she, not the lawyer, had

[1] A different assistant district attorney appeared for the Commonwealth in the present appeal.

written the brief, and the defendant's counsel accepted her explanation without further inquiry. The special master concluded that what the lawyer did "was minor and inconsequential" and that "it, beyond any reasonable doubt, was a completely harmless mistake of judgment for him to proofread the brief."

1. *The impropriety.* We state with emphasis that the situation disclosed by the present record should never have arisen. It is common ground that the lawyer in question, having participated in the preparation of the defendant's case, could not properly participate in the prosecution of the defendant. The principle is clear that a lawyer who represents a client in litigation should not thereafter represent an adversary in the same case. That principle is in part, but only in part, "a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage." *Emle Indus., Inc.* v. *Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). The principle also rests on the lawyer's obligation to exercise his professional judgment, within the bounds of the law, "solely for the benefit of his client and free of compromising influences and loyalties." ABA Code of Professional Responsibility, EC 5-1 (1978). Cf. S.J.C. Rule 3:22, DR 5-105, 359 Mass. 816 (1972). See *Cinema 5, Ltd.* v. *Cinerama, Inc.*, 528 F.2d 1384, 1386-1387 (2d Cir. 1976). In his representation of the original client, there should be no prospect that he might later be employed by a different client to uphold or upset what he had done. *General Motors Corp.* v. *City of N.Y.*, 501 F.2d 639, 649 (2d Cir. 1974). Nor, in the later representation of the adversary, should there be any possibility that the loyalty of counsel to the adversary is diluted by lingering loyalty to the original client.

In the context of civil actions conducted by private law firms the principle is enforced with rigor. It has been applied to associate counsel and law clerks and perhaps to others who have access to confidential information,

even though their work is nonlegal. *Consolidated Theatres, Inc.* v. *Warner Bros. Circuit Management,* 216 F.2d 920, 927 (2d Cir. 1954). See *NCK Organization, Ltd.* v. *Bregman,* 542 F.2d 128, 132-134 (2d Cir. 1976). Certainly a law student doing legal work under the supervision of a member of the bar is fully subject to professional restraints. S.J.C. Rule 3:11, 367 Mass. 914 (1975), and order dated December 30, 1974, implementing the rule. See H. Drinker, Legal Ethics 106 (1953). "If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment." S.J.C. Rule 3:22, DR 5-105 (D), as then in effect, 359 Mass. 816 (1972). The principle has been extended to subsequent cases "substantially related" to the subject matter of a prior representation, although in such cases there is room for inquiry into the extent of the relationship between the two matters. *Silver Chrysler Plymouth, Inc.* v. *Chrysler Motors Corp.,* 518 F.2d 751, 754-757 (2d Cir. 1975).

The application of the principle to public officials is somewhat less rigorous. See *United States* v. *Standard Oil Co.,* 136 F. Supp. 345, 360-364 (S.D.N.Y. 1955); ABA Comm. on Professional Ethics, Opinions, No. 342 (1975); G. Hazard, Ethics in the Practice of Law 107-119 (1978); Liebman, The Changing Law of Disqualification: The Role of Presumption and Policy, 73 Nw. L. Rev. 996, 1019-1020 (1979). Cf. 18 U.S.C. § 207 (1976), as amended by 92 Stat. 1864 (1978) (restrictions on former government officials); G. L. c. 268A, § 5 (same). Many lawyers who work for the government come from private practice; the government's ability to function would be impaired if disqualification of one lawyer automatically resulted in disqualification of his agency. Where a lawyer who has represented a criminal defendant joins a prosecutor's office, disqualification of the entire office is not necessarily appropriate. That lawyer is of course disqualified from participating in the case on behalf of the prosecution. See

Annot., 31 A.L.R. 3d 953 (1970), and cases cited. But individual rather than vicarious disqualification is the general rule. *Hannon* v. *State*, 48 Ala. App. 613, 618 (1972). *State* v. *Brown*, 274 So. 2d 381, 382-383 (La. 1973). *Fox* v. *Shapiro*, 84 Misc. 2d 223, 227 (N.Y. Sup. Ct. 1975). *Mattress* v. *State*, 564 S.W.2d 678, 679-680 (Tenn. Ct. Crim. App. 1977). *State* v. *Miner*, 128 Vt. 55, 58-62 (1969). See ABA Opinion No. 342, at 10-11 (construing DR 5-105 [D] to be inapplicable to government lawyers); Mass. B. Ass'n, Informal Opinion No. 79-4, published in 64 Mass. L. Rev. 93 (1979). But see *State* v. *Chambers*, 86 N.M. 383, 384-388 (Ct. App.), cert. denied, 86 N.M. 372 (1974); *State* v. *Latigue*, 108 Ariz. 521, 522-523 (1972) (disqualified lawyer in supervisory position). While the rule of vicarious disqualification may be relaxed in the case of a government law office, individual disqualification must be complete. Any participation by the disqualified lawyer gives rise to the very questions the stricter rule is designed to foreclose. See *Upton* v. *State*, 257 Ark. 424, 426-428 (1974). Cf. *Graham* v. *McGrail*, 370 Mass. 133, 138 (1976). Less than complete abstention by a disqualified member of a prosecutor's office would warrant disqualification of the entire office and appointment of a special prosecutor. *Younger* v. *Superior Court*, 77 Cal. App. 3d 892, 896-897 (1978) (disqualified lawyer in supervisory position). Cf. *Fox* v. *Shapiro*, 84 Misc. 2d 223, 227-229 (N.Y. Sup. Ct. 1975) (elaborate scheme to insulate disqualified district attorney).

2. *Prejudice.* The rules of disqualification we have outlined are primarily designed to avoid conflicts of interest before they arise. On a motion to disqualify a lawyer from participating in a proceeding there is no weighing of the probabilities that actual harm will result from his participation. The rules are applied not only to prevent prejudice to a party, but also to avoid even the appearance of impropriety. *Emle Indus., Inc.* v. *Patentex, Inc.*, 478 F.2d 562, 570-571 (2d Cir. 1973). A case stands in a different posture when there has been no disqualification

and the rules are used to attack a criminal conviction. Cf. S.J.C. Rule 3:22A, 377 Mass. 922 (1979). Once a case has gone to judgment, whether an impropriety has resulted in prejudice becomes a relevant consideration. See *People v. Cruz*, 55 App. Div. 2d 921, 921-922 (N.Y. 1977). Cf. *Commonwealth v. Bottiglio*, 357 Mass. 593, 598 (1970), and cases cited.

When the impropriety is a conflict of interest on the part of a defendant's trial counsel, it may be impossible to identify from the record the resulting prejudice. The formation of the record itself might be affected by decisions influenced by the conflict. In such a case, inquiry by an appellate court into prejudice would require "unguided speculation." *Holloway v. Arkansas*, 435 U.S. 475, 490-491 (1978). Thus, when a defendant has asserted that his trial was infected by such a conflict of interest, we have required only that he establish the existence of a genuine conflict. Because such a conflict could affect substantial rights of the defendant, prejudice is presumed if a conflict is demonstrated. *Commonwealth v. Rondeau, ante* 408, 415 (1979). *Commonwealth v. Davis*, 376 Mass. 777, 780-782 (1978). *Commonwealth v. Leslie*, 376 Mass. 647, 651 (1978). *Commonwealth v. Bolduc*, 375 Mass. 530, 540-543 (1978). Cf. *Commonwealth v. Soffen*, 377 Mass. 433, 437 (1979) ("if a more tenuous conflict appears, we might still reverse the judgment on a showing of material prejudice"). See *Glasser v. United States*, 315 U.S. 60, 75-76 (1942). But see *Irving v. State*, 361 So. 2d 1360, 1363-1365 (Miss. 1978), cert. denied, 441 U.S. 913 (1979).

Prosecutorial conflicts of interest are treated with similar strictness. No showing of prejudice is required when the prosecutor has a personal interest in the outcome of a criminal trial. *Commonwealth v. Tabor*, 376 Mass. 811, 817-820 (1978) (violation of statute). *Sinclair v. State*, 278 Md. 243, 255 n.8 (1976). Nor do courts attempt to determine whether there was actual prejudice where a lawyer who represented the defendant later appears at trial on behalf of the prosecution. *Wilson v. State*, 16 Ind. 392,

395-396 (1861). *State* v. *Leigh,* 178 Kan. 549, 552-553 (1955). *State* v. *Burns,* 322 S.W.2d 736, 742 (Mo. 1959).

When a defendant's lawyer switches sides, the principal danger is that information supplied in confidence will be used to the defendant's disadvantage. That danger is greatest when the lawyer switches sides prior to trial, and is in a position to use confidential information in his formulation of strategy and development of the facts. Resulting prejudice could be impossible to assess. But see *Manuel* v. *Salisbury,* 446 F.2d 453, 455-456 (6th Cir. 1971), cert. denied, 405 U.S. 1046 (1972), appeal after remand, 497 F.2d 388, 389 (6th Cir. 1974) (no prejudice where prosecutor had been partner of lawyer consulted by defendant, but had received no confidential information). The danger of prejudice is far less when a prosecutorial conflict arises during appellate proceedings. At that stage, the prosecution has far less discretion; its role is to answer arguments made by the defendant.

In the present case, there is no contention that a conflict of interest affected the trial in any way. Nor does the defendant contend that the lawyer was an agent for the prosecution who sabotaged the motion for a new trial. Cf. *Commonwealth* v. *Manning,* 373 Mass. 438, 441-445 (1977). The record is uncontaminated, and an assessment of prejudice is a realistic task.

Notwithstanding the impropriety, the appeal resulted in a reduction of the defendant's conviction. It is conceivable that in some cases confidential information might be useful even on appeal. But in this case, we cannot see how information not in the record could have helped the prosecution. The special master's careful findings on the extent of the lawyer's participation in the case foreclose any possibility that the impropriety was prejudicial.

We in no way condone the conduct of the prosecution in the present case. The assistant district attorney should not have asked the lawyer to perform any tasks in connection with the brief. The lawyer should have refrained from any participation in the appeal. But his participa-

tion was minimal and resulted in no harm to the defendant. Not every violation by a prosecutor of rules of professional conduct requires reversal of a conviction. *People* v. *Green,* 405 Mich. 273, 292-295 (1979). In the present case, the impropriety was limited to the appeal; the prior proceedings were free from any possibility of taint. If relief were in order, it would therefore be limited to a new appeal, with appropriate disqualifications. See *Osborne* v. *Commonwealth, ante* 104, 114-115 (1979). But in our view, such an appeal would serve no purpose. Considering all the circumstances of this case, we conclude that relief is not warranted.

3. *Other issues.* Other allegations of impropriety made in the defendant's brief relate to the conduct of the master and the single justice who confirmed the master's report. The Commonwealth moved to strike these portions of the brief. We deny that motion, and allow the defendant's motion to expand the record to include an affidavit of his former counsel. We have given the defendant's arguments full consideration, and find them to be without merit.

*Judgment affirmed.*