436 A.2d 772 (1981)
In re J. S.
No. 303-81.
Supreme Court of Vermont.
September 10, 1981.
Dissenting Opinion of HILL, Justice September 22, 1981.
Mark J. Keller, Chittenden County State's Attorney, and Susan R. Via, Chief Deputy State's Atty., Burlington, for plaintiff.
Stephen S. Blodgett and Peter C. Stern, Burlington, for defendant.
Before BARNEY, C. J., and LARROW, BILLINGS, HILL and UNDERWOOD, JJ.
BARNEY, Chief Justice.
This is an interlocutory appeal to review the denial of a motion to disqualify the prosecutor's office in these juvenile proceedings. The situation arose from public statements made by the state's attorney about the prosecution of this case to a legislative committee investigating the juvenile law. Extended comment on the remarks would serve no useful purpose. The lower court made full findings, presently within the strictures of confidentiality called for by 33 V.S.A. § 651(d) and 33 V.S.A. § 663(a). The public press also reported some of the statements relating to the state's attorney's avowal to breach those very statutes, as well as those strongly indicating the state's attorney's personal belief in the guilt of the juvenile of an admittedly heinous crime, and stating his belief that only an out-of-state facility was the proper place of custody for J.S.
A majority of the Court is convinced that the evidence demonstrated sufficient prosecutorial impropriety to require disqualification. The law of Vermont has *773 always recognized that the responsibility of the state's attorney, to carry out his function to represent the sovereignty of the State of Vermont, requires him to act with impartiality and with the objective of doing justice without regard to his personal feelings. If he cannot so act, his responsibility to his position and profession requires him to disqualify himself. This is the rule of State v. Hohman, 138 Vt. 502, 505-06, 420 A.2d 852, 855 (1980) (citing Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). It has been said that in this nation the law of the land is a law which hears before it condemns. Strong statements of the duty of a prosecutor to recognize the rights of a defendant to a fair and impartial trial where the statutory presumption of innocence may operate as the law are found in the Vermont Reports. See State v. Goshea, 137 Vt. 69, 76, 398 A.2d 289, 293-94 (1979). That departures from the proper role of a prosecutor are destructive to the rights of the parties and result in unnecessary delays and even retrials is noted in State v. Lapham, 135 Vt. 393, 407-08, 377 A.2d 249, 257-58 (1977). As was the case in State v. Jackson, 127 Vt. 237, 238, 246 A.2d 829, 829 (1968), the ruling in this case is intended to be seen as a directive as to acceptable conduct of those professionally employed in representing the State before the courts of Vermont.
There is no doubt but that the delay created by this event is regrettable, but the consequences of failing to take steps to remedy the prejudice now would jeopardize the proceedings at a later time when the prospects of delay would be multiplied and the consequences probably more drastic with respect to the rights of the defendant or the people of the State of Vermont or both. It is unconscionable for a prosecutor representing the people of the State of Vermont to undermine rights specifically guaranteed in the Constitution he has taken an oath to uphold.
The order of the lower court in this matter denying disqualification of the office of state's attorney of Chittenden County is reversed, and that office is disqualified for purposes of this case. State v. Hohman, 138 Vt. 502, 420 A.2d 852 (1980). The concurrent order of the lower court denying dismissal of the action is affirmed.
The hearing in this matter scheduled for August 13, 1981, is continued until further order of this Court. A copy of this entry shall be furnished the Attorney General.
BILLINGS, Justice, dissenting.
I am unable to join the majority. Besides being wrongly decided on the merits, the opinion is too broad and will encourage prosecutor shopping and unnecessary appeals.
My first objection is that the majority's recitation of the facts is wholly inadequate, particularly its failure to quote the prosecutor's statements which are the sole issue in this case. The majority asserts that the strictures of confidentiality required by 33 V.S.A. §§ 651(d) and 663(a) prevent it from repeating the statements. I disagree. As the juvenile is not specifically identified, either in this opinion or in the prosecutor's comments, I feel that the confidentiality required by 33 V.S.A. §§ 651(d) and 663(a) is met. The statements, made at a House Judiciary Committee hearing, are already a part of the public record and no further harm can come from repeating them here. Indeed, neglecting to confront them directly poses a greater risk of injustice. By not publishing what the prosecutor said, the majority leaves in the dark what criteria it used in determining that the statements required disqualification. The opinion provides no guidelines to enable the legal profession to determine what is or is not disqualifying conduct. Therefore, before a meaningful discussion of the merits of this case can be entered into, the statements must be set forth.
On June 24, 1981, the House Judiciary Committee, in response to public pressure occasioned by the rapes and murder which are the subject of the present case, held hearings investigating the state's juvenile law. The state's attorney for Chittenden County was asked to testify before the committee to present his office's views on proposed *774 changes to the law. The pertinent part of his testimony is as follows:
The last thing thatat least that I have to saythere are two other things. One thing is the victim should be able to know who did it to them. Who is the person who perpetrated the crime on them. Right now, technically if the 15 year old comes inis released from detention, we are legally prohibited from telling Megan . . . or her family because we are not allowed to give any information to her. We will not follow that. I had already planned to violate that law if he was released. But we should not have to be put in that position. At the very least, the victim should be told what happens to that person. . . . The last thing is there is a dire need for a detention center for juveniles. Treatment center or whatever you want to call it in the state. I kind of laugh a little bitlaugh is not the right word, but it is the only thing we can do is when a number of people sayget up and say that 15 year old who killed Melissa is getting out in three years. If he is not transferred out of state, then he would be out by October because there is no place in the state to keep him. He cannot stay in the Waterbury detention center because it is against the law to keep him there. After he is adjudicated, he cannot stay there except for very short periods sf [sic] time. So he would have to be in a group home or in the Benson Wilderness Camp. The Benson wilderness camp [sic] is not a secure facility. The group homes are not secure facilities. He can go into school and send him to high school and be out on the streets. So obviously we are trying to, if we are successful in doing the case we are trying to have him sent out of state because that is the only place he can be sent. If we are unsuccessful, then we don't have to worry about 18 year old jurisdiction of juveniles because he will be out when he is 15 or 16. That is all. Thank you.
As an initial observation, it is obvious from the above that, contrary to what the majority opinion reports, the prosecuting attorney never stated a strong personal belief in the guilt of the juvenile. He merely repeated and responded to the statements of others to that effect. Moreover, a prosecutor's personal belief that a defendant is guilty does not by itself prejudice a defendant's right to a fair and impartial hearing. Such an opinion is only prejudicial if it comes to the attention of and improperly influences the trier of fact. State v. Hohman, 138 Vt. 502, 420 A.2d 852 (1980); Alschuler, Courtroom Misconduct by Prosecutors and Trial Judges, 50 Tex.L.Rev. 629 (1972); Note, The Nature and Consequences of Forensic Misconduct in the Prosecution of a Criminal Case, 54 Colum.L.Rev. 946 (1954).
My second objection to the majority opinion is that it ignores the holding in State v. Hohman, supra. The Hohman decision "requires a determination of the prejudice to the defendant under the particular circumstances of the case at hand." Id. at 507, 420 A.2d at 855. The majority completely neglected to make such a determination. If they had, they would have been unable to find any prejudice to the defendant's rights in this case.
The only ground for disqualifying a prosecutor under Vermont law is if the defendant's and the State's right to a fair and impartial trial has been jeopardized by the prosecution. Id. A fair trial can be prejudiced in two ways. One is by forensic misconduct and the other is by a conflict of interest. See id.; State v. Miner, 128 Vt. 55, 258 A.2d 815 (1969); Alschuler, Courtroom Misconduct by Prosecutors and Trial Judges, supra; Note, The Nature and Consequences of Forensic Misconduct, supra.
Prosecutor's forensic misconduct has been defined as "any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law." Note, The Nature and Consequences of Forensic Misconduct, supra, at 949. More simply, misconduct is behavior by the prosecutor which improperly influences the trier of fact. *775 Generally, such misconduct is ground for disqualification only in jury trials. The rationale is that the jury is especially vulnerable to a prosecutor's influence because his actions are weighted with the authority of his office. Alschuler, Courtroom Misconduct by Prosecutors and Trial Judges, supra, at 632. Bench trials, as in the present case, are not usually tainted by misconduct because the judge as a professional is not vulnerable to such influence.
In the present case, however, forensic misconduct is not the appropriate ground for disqualification as no claim has been made that the district court judge was or would be influenced by the prosecutor's statements. Furthermore, the trial court found that there was no evidence that would indicate prosecutorial bias or prejudice against the juvenile during any proceedings in court or in the prosecutor's relationship and ability to communicate with defense attorneys in this case. The trial court found that the prosecutor and his staff had behaved appropriately in court.
The other ground for disqualifying a prosecutor is if he has a conflict of interest. In criminal cases conflicts of interest are usually one of two types. The first, which does not apply to this case, occurs when the prosecutor has previously represented or been consulted professionally by the accused with respect to the offense charged. E. g., State v. Miner, supra. The second occurs when the prosecutor has a personal interest or stake in convicting the accused. E. g., State v. Hohman, supra. Such a conflict may arise if the prosecutor is related to a victim or stands to gain politically or financially by the conviction.
The Hohman case falls squarely within the latter situation. In Hohman the state's attorney campaigned for re-election by promising to convict the defendant if elected. He had tied his political future to convicting Hohman. The Court found that he was unable to plea bargain in good faith and therefore the defendant had been prejudiced at the plea bargaining stage. The key aspect of the Hohman case is the statement of the Court that "[t]he awesome power to prosecute ought never to be manipulated for personal or political profit." Id. at 505, 420 A.2d at 855.
In the present case, however, no such conflict of interest exists. There is no evidence that the state's attorney is currently engaged in a campaign for re-election to his post or that he has announced he is a candidate for any other position. Although the prosecutor exercised poor judgment in making the statements, that does not make them prejudicial. As the Court stated in Hohman: "Unethical conduct, however worthy of censure, does not necessarily deprive a defendant of a fair trial, and is therefore distinguishable from prejudicial error." Id. at 506, 420 A.2d at 855. To disqualify a prosecutor, prejudice or the potential for prejudice must be demonstrated.
Moreover, the prosecutor's refusal to plea bargain, in and of itself, is not prejudicial. A constitutional right to plea bargain has not been recognized. A prosecutor who believes in good faith that he has a very strong case is under no obligation to negotiate.
The prosecutor's comments about seeking out-of-state placement for the juvenile are likewise not prejudicial. The placement of the juvenile after the hearing is entirely at the discretion of the Department of Corrections, over which the state's attorney has little or no influence.
Finally, the prosecutor's vow that he would violate the law by informing the victim of the defendant's release is also not prejudicial. Although unethical, such a statement has no bearing on the determination of the juvenile's rights. It is neither misconduct improperly influencing the trier of fact nor does it evidence a conflict of interest.
By its failure to make a determination of prejudice as required by Hohman, the majority has in effect adopted the per se rule specifically rejected by Hohman. Hohman held that although "some courts have chosen to make prosecutorial bias per se reversible error as a matter of public policy, we are inclined to join those courts that have required some prejudice." Id. at 506, *776 420 A.2d at 855 (citation omitted). Because the most essential facts of this case are omitted, namely the prosecutor's statements, and the pronouncements of the majority are so broad, it is arguable that todays decision holds that any questionable conduct by a prosecutor is grounds for disqualification whether or not it is prejudicial or even unethical.
HILL, Justice, dissenting.
I concur in the dissent of Justice Billings and write separately to emphasize the bases of my disagreement with the majority. Unfortunately, their decision neither follows standing precedent nor explicates precise standards for future decisions.
This Court has addressed prosecutorial disqualification in three prior cases. In State v. Bosworth, 124 Vt. 3, 197 A.2d 477 (1963), we upheld the trial court's denial of the defendant's disqualification motion on an appeal from a criminal conviction. The Bosworth Court observed that nothing in the record "demonstrat[ed] bias or prejudice on the part of the state's attorney. . . . Everything in the record indicates that the respondent has had a fair trial at the state's attorney's hands." Id. at 10, 197 A.2d at 481-82.[1] In State v. Miner, 128 Vt. 55, 258 A.2d 815 (1969), we adhered to the actual prejudice standard in our review of a murder conviction. See id. at 62, 258 A.2d at 819. Finally, State v. Hohman, 138 Vt. 502, 506-07, 420 A.2d 852, 855 (1980), held that prosecutorial bias required reversal of a conviction only when such bias prejudiced the defendant's right to a fair trial. Thus, our prior cases have established that a conviction will be overturned for prosecutorial bias only upon a showing of palpable, harmful prejudice to the defendant.
This case presented us with our first interlocutory appeal of a motion to disqualify a prosecutor. Unlike our prior cases, the issue is not whether prosecutorial bias tainted a conviction.[2] Rather, this appeal turns on the proper standard for disqualification decisions at the trial level, and the applicability of that standard to this case. See Pisa v. Commonwealth, 378 Mass. 724, ___, 393 N.E.2d 386, 389 (1979).
The majority recognizes the complexity of the prosecutor's duties. A prosecutor is not only an advocate. He or she is also an officer of the state and must advance "just results," even if they come at the expense of convictions. Prosecutors are bound to disclose exculpatory evidence to defendants. State v. Goshea, 137 Vt. 69, 76, 398 A.2d 289, 294 (1979); Code of Professional Responsibility, 12 V.S.A.App. IX, DR 7-103(B). They are vested with substantial discretion over the institution of criminal proceedings. See State's Attorney v. Attorney General, 138 Vt. 10, 13, 409 A.2d 599, 601 (1979). Their responsibilities to the state include both zealous prosecution and scrupulous protection of individual rights. See generally Developments in the Law Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1417-18 (1981). To fulfill these responsibilities, a prosecutor should be dispassionate and objective.
Our state's attorneys are also elected public officials, who derive their authority from the legislature, and are responsible for the prosecution of all crimes within their jurisdiction. See 24 V.S.A. § 361(a); State's Attorney v. Attorney General, supra, 138 Vt. at 12-13, 409 A.2d at 601. When the courts disqualify a state's attorney, another prosecutor replaces the one designated by statute and election. Disqualification entails other difficulties, such as delays and potential prejudice to the state. See generally, Developments, supra, at 1471-73. Given the gravity of the competing *777 interests, this Court should adopt a precise disqualification standard, one that protects the rights of defendants while permitting state's attorneys to perform their duties when rights are not threatened.
The Court's decision in this case does not respond to the complexities of the problem. The majority departs from our precedents, which have focused upon the impact of prosecutorial bias on defendants, and does not address the role of prejudice in disqualification rulings. Instead, the opinion strays toward a vague notion of per se disqualification for misconduct, thereby confusing the proper role of disqualification and disciplinary proceedings. Cf. Developments, supra, at 1500-03 (discussing the advantages of disciplinary proceedings over disqualification in civil cases). Disqualification is not the remedy for prosecutorial misconduct. It is a protection against unfair trials. The fairness of the process, not the virtue of the attorneys, is our real concern.
Although this is a case of first impression, our prior case law provides the basis for a workable standard. The concerns before trial differ from those after conviction in degree, not kind. A fair trial remains the goal. However, before a trial, the court should be sensitive to the potential for prejudice to the defendant. I believe that a trial court should disqualify the state's attorney if his continued presence in the case would cause a reasonable potential for prejudice to the defendant. "A reasonable potential for prejudice" standard would rigorously protect defendants. It would not require a showing of actual, or likely, harm. Rather, the trial court would focus on the possibility of an unfair trial. Yet, this rule would place the burden on defendants of demonstrating some real, not imagined, chance of prejudice. Such a rule would comport with the decisions of numerous other states which have adopted similar standards for adjudicating disqualification motions. See, e. g., Pisa v. Commonwealth, supra, 378 Mass. at ___, 393 N.E.2d at 389; People v. District Court, 189 Colo. 159, 162, 538 P.2d 887, 888-89 (1975) (en banc); People v. Zimmer, 51 N.Y.2d 390, 394, 414 N.E.2d 705, 707, 434 N.Y.S.2d 206, 208 (1980) ("reasonable potential for prejudice will suffice [to disqualify]"). The standard I suggest is a strict test. It would certainly disqualify prosecutors who had serious conflicts of interest, see People v. Zimmer, supra, 51 N.Y.2d at 393, 414 N.E.2d at 706, 434 N.Y.S.2d at 207; displayed extreme bias toward the defendant, see State v. Snyder, 256 La. 601, 603-04, 237 So.2d 392, 393-94 (1970); or possessed a "personal stake" in the outcome of the case. See State v. Hohman, supra, 138 Vt. at 504-05, 420 A.2d at 854.
Despite my adherence to a strict disqualification standard, I cannot join the majority in disqualifying the prosecutor in this case. As the dissent of Justice Billings convincingly demonstrates, the defendant has failed to establish any danger of prejudice. Furthermore, the majority opinion offers no guidance to the trial courts and ignores the principles of our case law. Accordingly, I respectfully dissent.
I am authorized to state that Mr. Justice Billings also concurs in this dissent.
NOTES
[1] The Court stated that the motion to disqualify "was addressed to the trial court's discretion," and also noted that the disqualification motion did not comply with the applicable court rule on the form and necessity for affidavits. See id. at 10, 197 A.2d at 481.
[2] In State v. Hohman, supra, the Court stated that the trial court erred in not disqualifying the prosecutor, but held the error harmless under the facts in that case. See id. at 506-07, 420 A.2d at 855. Despite the contrary intimations in the majority opinion, Hohman did not delineate a precise standard to govern disqualifications.